**F I L E D**

PUBLISH

**January 23, 2007**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

KATHERINE MELADIE
ROBERTSON,

      Defendant - Appellant.

No. 05-7020

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CR-04-094-01-WH)**

---

Barry L. Derryberry, Research and Writing Specialist (and Paul D. Brunton, Federal Public Defender, Office of the Federal Public Defender, with him on the briefs), Tulsa, Oklahoma, for Defendant - Appellant.

Dennis A. Fries, Assistant United States Attorney (and Sheldon J. Sperling, United States Attorney, with him on the brief), Muskogee, Oklahoma, for Plaintiff - Appellee.

---

Before **KELLY**, **MURPHY**, and **HOLMES**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Defendant-Appellant Katherine Meladie Robertson appeals from her conviction for conspiracy to use an interstate commerce facility in the commission of a murder-for-hire, in violation of 18 U.S.C. § 1958(a). Following her conviction, Ms. Robertson was sentenced to 120 months' imprisonment followed by 24 months' supervised release. On appeal, she argues that the district court (1) improperly instructed the jury as to an element of the offense, and (2) abused its discretion in failing to hold an evidentiary hearing to determine whether a conversation between a state-court deputy clerk ("deputy clerk") and a juror was improper. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

Background

Ms. Robertson was charged in a five count indictment. Count 1 alleged that Ms. Robertson conspired with Hugh Alan Means, her former employer with whom she had an extramarital affair, to use an interstate commerce facility—a telephone—in the commission of a murder-for-hire in violation of 18 U.S.C. § 1958(a). I R. Doc. 5. The object of the conspiracy was to hire a "professional" or "hit man" to murder her husband, Brett Robertson. Counts 2 through 5 alleged substantive violations of § 1958(a) based on various telephone calls by Ms. Robertson.

Following a jury trial, Ms. Robertson was convicted on all five counts. The

district court then granted a judgment of acquittal on counts 2 through 5, based on its finding that no evidence supported the consideration element of § 1958(a). I R. Doc. 46; VI R. at 791-95; see United States v. Wicklund, 114 F.3d 151, 154 (10th Cir. 1997).

Ten days later, Ms. Robertson filed a motion for new trial based, in part, on allegedly improper juror contact. See I R. Doc. 47. In connection with that motion, Ms. Robertson also requested a hearing. See I R. Doc. 48 at 3. Ms. Robertson claimed that, during trial, her attorneys witnessed a state court deputy clerk speaking with a juror on the steps of the federal courthouse. After the jury returned its guilty verdict, one of her attorneys learned that the same deputy clerk had allegedly made disparaging remarks regarding Ms. Robertson to his coworkers.

In response to Ms. Robertson's motion, the government submitted an FBI report concerning an FBI interview of the deputy clerk. See I. R. Doc. 52 Ex. 1 at 1. The interview tended to show that: (1) the deputy clerk was hailed by the juror when the deputy clerk was leaving the federal courthouse; (2) the deputy clerk was unaware that the juror was serving as a juror; (3) the deputy clerk recognized the juror from livestock shows where the juror's daughter also shows cattle; (4) the juror inquired how the deputy clerk's nephew was doing; (5) the entire conversation lasted one minute; and (6) neither the deputy clerk nor the juror

made any comments about Ms. Robertson or the trial.  Id. at 1-2.  Having reviewed the evidence, the district court denied both the motion for new trial and the request for an evidentiary hearing.  I R. Doc. 53 at 4.

Discussion

I.    Jury Instructions

Ms. Robertson argues that the district court failed to include an element of the offense, a specific intent that a murder be committed, in its instructions as to the crime of conspiracy to violate § 1958(a).  She also argues that the district court should have defined murder as the unlawful killing of another with malice aforethought.  In pertinent part, § 1958(a) provides: "Whoever . . . uses or causes another . . . to use . . . any facility of interstate . . . commerce, with intent that a murder be committed in violation of the laws of any State or the United States . . . as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so . . ." shall be subject to imprisonment and/or fine. 18 U.S.C. § 1958(a) (2004).

Given a proper objection, the omission of an element from an instruction is subject to harmless error review.  Neder v. United States, 527 U.S. 1, 8-10 (1999). Both parties agree, however, that Ms. Robinson failed to object to the jury

instructions at trial, and thus we review this issue for plain error. See United States v. LaVallee, 439 F.3d 670, 684 (10th Cir. 2006); Fed. R. Crim. P. 30(d) & 52(b). Plain error exists only where (1) there was error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings. United States v. Olano, 507 U.S. 725, 732 (1993); see also Fed. R. Crim P. 52(b).

The district court below instructed the jury as to count 1 as follows:

Title 18 United States Code Section 1958(a) provides in pertinent part that whoever travels in or causes another to travel in interstate commerce or uses or causes another to use the mail or any facility in interstate or foreign commerce with the intent that a murder be committed as consideration for the receipt of or as consideration for a promise or agreement to pay anything of pecuniary value or who conspires to do so is guilty of an offense against the laws of the United States.

To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First, the defendant agreed with at least one other person to violate the law;

[S]econd, one of the conspirators engaged in at least one overt act furthering the conspiracy's objective;

[T]hird, the defendant knew the essential objective of the conspiracy was to use an interstate facility in a murder for hire;

[F]ourth, the defendant knowingly and voluntarily participated;

[F]ifth, there was interdependence among the members of the conspiracy. That is the members in some way or manner intended to act together for their shared mutual benefit within the scope of the

conspiracy charged.

VI R. at 770-71. As Ms. Robinson correctly asserts, the instruction did not include "intent that a murder be committed" as an element of the offense. The district court did, however, read the allegations in count 1 of the indictment to the jury, including Ms. Robertson's alleged overt acts and the fact that she was alleged to have intended that a murder be committed. VI R. 768-71.

"A conspiracy is a partnership in crime[,]" and "has ingredients, as well as implications, distinct from the completion of the unlawful project." Pinkerton v. United States, 328 U.S. 640, 644 (1946) (internal citations omitted). "[T]he essence of any conspiracy is 'the agreement or confederation to commit a crime.'" United States v. Hanson, 41 F.3d 580, 582 (10th Cir. 1994) (quoting United States v. Bayer, 331 U.S. 532, 542 (1947)); see also United States v. Bicaksiz, 194 F.3d 390, 398 (2d Cir. 1999) (noting, with regard to a conviction for conspiracy to violate 18 U.S.C. § 1958, that "[a]n essential element of the crime of conspiracy is an agreement"). Moreover, "[c]onspiracy to commit a particular substantive offense cannot exist without at least the degree of criminal intent necessary for the substantive offense itself." Ingram v. United States, 360 U.S. 672, 678 (1959).

Turning to the elements of the substantive offense, § 1958(a) requires the government to prove that the defendant: (1) used or caused another to use any

facility of interstate or foreign commerce; (2) with the intent that a murder be committed; (3) as consideration for a promise or agreement to pay anything of pecuniary value.  See 18 U.S.C. § 1958(a); see also United States v. Ritter, 989 F.2d 318, 321 (9th Cir. 1993) (setting out similar elements as to the "travel" mode portion of § 1958(a)).

We tend to agree with Ms. Robertson that the district court's jury instructions on the required elements of conspiracy to violate § 1958(a) should have included intent that a murder be committed.[1]  This element must be proven in order to obtain a conviction on the substantive offense of using an interstate commerce facility in the commission of a murder-for-hire.  See United States v. Winters, 33 F.3d 720, 721 (6th Cir. 1994) ("Congress did include an element of intent . . . in [§ 1958(a)]—a defendant must act 'with intent' to murder.").  Consequently, that intent must also be proven in any conspiracy conviction.  Cf.

_____

[1]  As a result, the district court's instructions on the elements of the conspiracy offense, at the very least, should have been as follows: (1) the defendant agreed with at least one other person to violate the law; (2) the defendant knew the essential objective of the conspiracy was to use an interstate facility in a murder for hire; (3) the defendant, at the time the conspiracy was entered into, intended that a murder be committed; (4) the defendant knowingly and voluntarily participated; and (5) there was interdependence among the members of the conspiracy.  Also, because the indictment in this case charged an overt act as to the § 1958(a) conspiracy count, the district court properly instructed the jury that it had to find that "one of the conspirators engaged in at least one overt act furthering the conspiracy's objective."  We need not, and do not, decide in this case, however, whether an overt act is always required for a § 1958(a) conspiracy conviction.

- 7 -

Ingram, 360 U.S. at 678 (explaining that the criminal offense of conspiracy to willfully evade federal taxes "obviously cannot be committed in the absence of knowledge of willfulness").

Despite the foregoing, we are of the opinion that Ms. Robertson has not shown that her substantial rights were affected—in other words, she was not prejudiced.[2]  See Olano, 507 U.S. at 734 (explaining that "to affect substantial rights" "means that the error must have been prejudicial").  To begin, the district court's instructions, as a whole, contained a consistent theme: the use of an interstate commerce facility with the intent that a murder be committed.  The district court informed the jury as to count 1 that it had to find that Ms. Robertson "knew the essential objective of the conspiracy was to use an interstate facility in a murder for hire," id., and it is difficult to see how the jury could find (which it did) that Ms. Robertson entered an agreement knowing one objective of the conspiracy was a murder-for-hire without also finding that she intended that a murder be committed.  Moreover, when instructing the jury on the substantive counts 2 through 5, the district court repeated § 1958(a)'s language and instructed that the second element of the offense was the "use of an interstate facility . . . with the intent that a murder be committed . . . ."  VI R. at 772.  Also, the district

_____

[2]  Because Ms. Robertson has failed to show that her substantial rights were affected, we need not decide whether the district court committed error or, if so, whether that error was plain.

- 8 -

court instructed that "[t]he government must prove that the use of an interstate facility was done with the intent to further or facilitate the commission of the murder. You are thus being asked to look into the defendant's mind and ask what was the defendant's purpose in using interstate facilities." Id. at 773. The instructions, therefore, made it clear that a conviction pursuant to § 1958(a) could not occur in the absence of an intent that a murder be committed. And, given the nature of the evidence and the guilty verdicts on counts 2 through 5, we think that the jury necessarily found the existence of that intent.

Further, there was overwhelming evidence presented to the jury at trial from which it could have found that the alleged agreement between Ms. Robertson and Mr. Means was entered into with the intent that a murder be committed.[3] See Washington v. Recuenco, 126 S. Ct. 2546, 2552 (2006)

---

[3] Ms. Robertson telephoned a former boyfriend and arranged a meeting with him. Suggestive of her intent, the former boyfriend testified that at the meeting, Ms. Robertson explained that she wanted her husband gone.

A. . . . and I asked her, I said what do you mean gone, you mean gone out of your life or gone out of your marriage or gone six feet under?
. . .
Q. What did she say?

A. She said she wanted him six feet under.

Q. Did you continue discussing this?

A. We did. She asked me if I knew of anybody that she could get in contact with to have – have it done, have her husband disposed of, I

(explaining that the trial court's failure to instruct the jury on an element of the offense is subject to harmless error analysis and that we must "ask[] whether the jury would have returned the same verdict absent the error").  The judgment of acquittal on counts 2 through 5 does not alter that conclusion because the acquittal was based on the district court's legal interpretation of what a different element (consideration) requires, not on the strength of the government's evidence.  Accordingly, even if we were to decide that the district court's omission satisfied the first two elements of the <u>Olano</u> standard, which we do not, the omission was harmless, and thus Ms. Robertson's substantial rights were not affected.

Ms. Robertson additionally contends that the jury should have been instructed that murder is defined as the killing of another human being with malice aforethought.  <u>See</u> 18 U.S.C. § 1111(a) (2006); Okla. Stat. Ann. tit. 21 § 701.7(A) (2006).  We disagree.  In enacting § 1958(a), Congress criminalized one specific type of murder—namely, murder-for-hire using interstate commerce facilities.  An instruction on malice aforethought would have been superfluous

---

guess. . . .

IV R. (2 Tr.) at 350-51 (testimony of Heath Shofner).  The former boyfriend explained it might cost "upwards of $100,000" which was more than the $25,000 Ms. Robertson had reserved for the task.  <u>Id.</u>

because premeditation is implicit in the hiring of a third party to kill another human being. In other words, there is no need to instruct the jury that murder requires a finding of malice aforethought when the instructions state that the underlying crime requires a finding of one specific type of premeditation—here, the murder of another in exchange for something of pecuniary value. And if one enters into an agreement calling for the death of another in exchange for something of pecuniary value, then malice aforethought necessarily exists.

II.     Hearing Regarding Improper Juror Contact

Ms. Robertson contends that the district court abused its discretion in denying her request for an evidentiary hearing regarding the conversation between a state-court deputy clerk and a juror. Ms. Robertson seems to suggest that an evidentiary hearing is required whenever a juror has a conversation with an individual and it is known that the individual has previously made disparaging remarks about the defendant to others. The government responds by pointing out that there is no evidence that the juror and the deputy clerk ever discussed Ms. Robertson or her pending trial.

We review a district court's denial of a motion for new trial and evidentiary hearing based upon alleged juror bias for an abuse of discretion. United States v. Easter, 981 F.2d 1549, 1552-53 (10th Cir. 1992). "When confronted with a claim of juror bias, the trial court has wide discretion in deciding how to proceed." Id.

- 11 -

at 1553. For example, "on rare occasions it is within the district court's discretion to refuse to hold a hearing when it can clearly be established that a hearing would not be useful or necessary." United States v. McVeigh, 153 F.3d 1166, 1186 (10th Cir. 1998) abrogated on other grounds by Apprendi v. New Jersey, 530 U.S. 466 (2000).

"In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial . . . ." Remmer v. United States, 347 U.S. 227, 229 (1954). We have previously qualified this presumption of prejudice, however, by requiring a showing by the defendant that the communication or contact was "about the matter pending before the jury." See United States v. Brooks, 161 F.3d 1240, 1246 (10th Cir. 1998). The defendant must also demonstrate "that an unauthorized contact created actual juror bias; courts should not presume that a contact was prejudicial." United States v. Frost, 125 F.3d 346, 377 (6th Cir. 1997). Otherwise, a Remmer hearing would be required "based on each of the multiple ordinary incidental contacts between non-sequestered jurors and virtually any other person during the course of a trial." Brooks, 161 F.3d at 1246.

Here, there is no evidence that the conversation at issue was about the matter pending before the jury. Rather, Ms. Robertson would have us infer that

the conversation touched on the matter pending before the jury simply because the deputy clerk had made disparaging remarks about Ms. Robertson on prior occasions. We decline to do so. The government made a showing that the conversation at issue was initiated by the juror, extremely short in duration, and never concerned Ms. Robertson or her trial. Ms. Robertson has brought forth no evidence, other than innuendo, to indicate that the conversation was anything other than friendly banter. We will not require a Remmer hearing based on innuendo alone. We also note that the district court admonished the jury at the beginning of trial that "during this trial you're not to discuss this case with anyone or permit anyone to discuss it with you." III R. (1 Tr.) at 19. Despite Ms. Robertson's urging, we will not easily assume that a juror disregarded this instruction. See United States v. Carter, 973 F.2d 1509, 1513 (10th Cir. 1992) ("We presume jurors will remain true to their oath and conscientiously follow the trial court's instructions."). In sum, there was insufficient evidence to give rise to the Remmer presumption and, accordingly, the district court did not err in denying both the request for an evidentiary hearing and the motion for new trial.

AFFIRMED.