**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 24, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

THOMAS T. WOOD,

Defendant-Appellant.

No. 09-4080
(D. Utah)

(D.C. No. 2:07-CR-000008-DB-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

---

A jury convicted Thomas T. Wood of (a) one count of endeavoring to obstruct or impede the administration of the Internal Revenue Code, in violation of 26 U.S.C. § 7212(a); and (b) two counts of wilfully failing to file personal income tax returns for 2000 and 2001, in violation of 26 U.S.C. § 7203. The district court sentenced him to thirty-six months' imprisonment; imposed a $250,000 fine ($100,000 for the § 7212(a) conviction and $75,000 for each of the

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§ 7203 convictions); and ordered him to pay $56,852 in restitution, as a condition of supervised release.

In this appeal, Mr. Wood contends that (1) the evidence is insufficient to support his § 7212(a) conviction; (2) § 7212(a) is unconstitutionally vague; (3) the jury was improperly instructed on the elements of a § 7212(a) violation; (4) the district court erred in imposing the $250,000 fine; and (5) the district court erred in imposing $56,852 in restitution.

We are not persuaded by Mr. Wood's challenges to his § 7212(a) conviction or the imposition of restitution. However, we agree with Mr. Wood that the district court plainly erred in imposing the $250,000 fine. We therefore affirm his § 7212(a) conviction and the order imposing restitution. We vacate the $250,000 fine and remand for further proceedings consistent with this order and judgment.

## I. BACKGROUND

Mr. Wood is a lawyer in Salt Lake City. In his capacity as a private citizen, he admits that he has not paid taxes since the mid-1980s, claiming that his religious beliefs forbid him to do so. In April 1998, Mr. Wood acted as the attorney of record for William Lewis, a defendant, along with Glenn Ambort and John Benson, in a federal prosecution for defrauding the United States by impeding the lawful functions of the IRS and aiding and assisting in the preparation of false tax returns. In late 1998, in a separate matter, Mr. Wood

- 2 -

began assisting "MyCor," a Canadian investing business run by Corinne McNabb, as well as Mr. Ambort and Mr. Benson.

MyCor described its business model to its investors as a way of allowing tax-free investments in offshore bank accounts in a tax haven country. After the money in those offshore bank accounts was invested, the investment profits and principal were to be returned to the original investors through foreign-issued debit cards. Unknown to its investors, MyCor's actual business model resembled a Ponzi scheme, in which early investors were given a high monthly return, financed with investments made by subsequent investors.

On behalf of MyCor, Mr. Wood received more than $11 million in funds from investors and from Ms. McNabb, and then transferred those funds into a non-interest bearing account in the name of "The Family Foundation." Mr. Wood had previously established this account to collect donations for the Goodmans, a family traveling the world to promote family values. The Family Foundation account was not identified with MyCor.

Of the $11 million in investment funds, Mr. Wood forwarded only about $1.5 million to Ms. McNabb. Mr. Wood spent approximately $5,786,381 of the remaining $9.5 million on behalf of Mr. Ambort and Mr. Benson, withdrawing the money from The Family Foundation account and moving it through foreign bank accounts opened in nominee names. Part of the $5,786,381 was used to purchase houses and to lease automobiles for Mr. Ambort, Mr. Benson, and their

associates, using the nominee names for the titles. Another part of that sum was transferred to offshore debit card accounts of individuals who lived with Mr. Ambort and Mr. Benson; it was then used to pay Mr. Ambort's and Mr. Benson's personal expenses. Mr. Wood spent approximately $409,064 in the same manner to pay for his and his family's personal expenses. Mr. Wood did not report any of this amount as income to the IRS.

A federal grand jury indicted Mr. Wood on one count of impeding the due administration of the tax code, in violation of 26 U.S.C. § 7212(a), and two counts of failing to file federal income tax returns (in 2000 and 2001), in violation of 26 U.S.C. § 7203. He pleaded not guilty, and a jury convicted him of all three counts.

The presentence report (PSR) determined the total intended tax loss to be $1,083,373. *See* Rec. vol. 3, at 7, ¶ 28, It derived that figure by taking the IRS's assessment of the gross income figures for the tax years 1999-2001 for Mr. Ambort, Mr. Ambort's associates, and Mr. Wood—$5,416,868—and then calculating 20% of that total.

The $1,083,373 tax loss resulted in a base offense level of twenty-two. The PSR then added three two-level enhancements (for failing to report the source of income exceeding $10,000, using sophisticated means, and using special skills in a manner that significantly facilitated the commission or concealment of the offense). *See id.* at 8, ¶¶ 34-36.

With a criminal history category of I, the advisory United States Sentencing Guidelines (USSG) recommended imprisonment from seventy-eight to ninety-seven months. However, those figures exceeded the statutory maximum of sixty months for all three counts. Therefore, the PSR concluded, the recommended sentence under the Guidelines was sixty months. *See* USSG § 5G1.1(a) (providing that "[w]here the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence").

The PSR concluded that, in light of Mr. Wood's offense level, the minimum fine was $12,500 and the maximum was $125,000. It added that the court could impose a lesser amount, or waive the fine altogether, if Mr. Wood was unable to pay. *See* Rec. vol. 3, at 16, ¶ 70 (citing USSG § 5E1.2(c)(3)). Upon review of Mr. Wood's assets and liabilities, the PSR further concluded that "[b]ased on "[Mr. Wood's] financial profile, to include significant tax debt, it appears that he does not have the ability to pay a fine." *Id.* at 7, ¶ 58.

After reviewing the PSR, the government filed a sentencing memorandum that calculated a slightly lower total tax loss—$1,078,057. *See* Rec. vol. 1, at 142. The government added that "[a] fine at the low end of the Guideline range is also appropriate." *Id.* at 150.

At the sentencing hearing, the government urged the court to order Mr. Wood to pay $56,852 in restitution. It explained that this sum was "20 percent of

the amount of expenditures that we could individually attribute to [Mr. Wood], on behalf of [Mr. Wood], and on behalf of his family, for those three years, '99, 2000, and 2001." Rec. vol. 2, at 923.

The district court imposed a sentence of thirty-six months' imprisonment, $56,852 in restitution, and a $250,000 fine. With regard to the fine, the court stated:

> I find that you do have the ability to pay that. You have devoted your life to manipulating your money so that you don't have to pay taxes and you don't have to satisfy the obligations that other people have to do. I know that the [PSR] shows that your wife sold her house and has $200,000 that is her money. That may be legally correct. I don't know. Everything about your life tells me that you have hidden money and you have done things in a way that keeps you from doing one little thing that we all have to do, maybe not a little thing, pay taxes. . . .
>
> I'll also impose restitution of $56,852 for taxes. I'm not imposing any other restitution. I'm imposing such a large fine, and I can't remember the last time I imposed such a large fine, because I think that it is the only way to get you to pay anything to the government. I have no confidence that you're ever going to pay your taxes. We'll put you on supervised release and one of the conditions is that you pay your taxes. Given your history I would be a fool to think you're not going to get through that year without paying taxes because that is what you do. That is what you have always done. You cannot in my view, and I don't see how you can get around this $250,000 fine, and it is a fine you have to pay. You have to pay it. Your property can be attached, a judgment can be obtained by the government . . . . We can get people attempting to collect money from you. I have no idea the amount of money that you have kept that was properly to be turned over to the United States government since the 1980s. It is probably quite a bit of money. You have been working as a lawyer most of that time. . . .

*Id.* at 927-28.  The court added that it was imposing a sentence within the Guidelines and had accepted the calculations of the PSR.

Counsel for the government then informed the court that the $250,000 fine was above the Guidelines' recommended maximum amount and stated, "I will assume [the amount of the fine] is a departure from the [G]uidelines." *Id.* at 936.  The court responded:

> Well, then let's put it within the [G]uidelines.  I will do $100,000 on count one, $75,000 on count two and $75,000 on count three. Is that within the [G]uidelines? We'll keep this whole thing within the [G]uidelines.

*Id.* at 937.  Neither the government nor Mr. Wood objected to the imposition of the $250,000 fine.

## II.  DISCUSSION

In this appeal, Mr. Wood argues that (1) the evidence was insufficient to support the § 7212(a) conviction; (2) § 7212(a) is unconstitutionally vague; (3) the jury was improperly instructed on the elements of a § 7212(a) offense; (4) the district court erred in imposing the $250,000 fine; and (5) the district court erred in imposing $56,852 in restitution.  We consider each argument in turn.

**A.  The evidence is sufficient to support Mr. Wood's § 7212(a) conviction.**

Mr. Wood advances three challenges to the sufficiency of the evidence supporting his § 7212(a) conviction**.**  First, he argues that the government failed to prove that he was aware of a pending IRS action or investigation.  Second, he

maintains that "the facts simply do not support that the natural and probable effect of Mr. Wood's actions was to obstruct the due administration of the Internal Revenue Code." Aplt's Br. at 27. Third, he asserts that the government failed to prove that he corruptly intended to obstruct or impede the IRS. *Id.* at 30.

We consider the sufficiency of the evidence de novo, viewing the evidence as a whole and in the light most favorable to the government and "asking whether any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt." *United States v. Parker*, 553 F.3d 1309, 1316 (10th Cir. 2009) (internal quotation marks omitted). Our review is deferential to the jury's factfinding, and we must sustain Mr. Wood's conviction if any rational juror could have found him guilty. *Id.* The jury's credibility determinations are "virtually unreviewable on appeal." *United States v. Virgen-Chavarin*, 350 F.3d 1122, 1134 (10th Cir. 2003) (internal quotation marks omitted).

Section 7212(a) provides, in part, that "[w]hoever corruptly or by force or threats of force . . . obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, shall, upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years, or both . . . ." In order to establish a violation of § 7212(a) in this case, the government must prove that a defendant "corruptly" endeavored to obstruct or impede the due administration of the internal revenue laws. *United States v. Winchell*, 129 F.3d 1093, 1098 (10th Cir. 1997).

- 8 -

Under § 7212(a), to act "corruptly" means to act with the intent to secure an unlawful benefit either for oneself or for another. *Id.* As the Eleventh Circuit has explained, "'corruptly' was used in § 7212(a) . . . to prohibit all activities that seek to thwart the efforts of government officers and employees in executing the laws enacted by Congress." *United States v. Popkin*, 943 F.2d 1535, 1540 (11th Cir. 1991). "In a system of taxation such as ours which relies principally upon self-reporting, it is necessary to have in place a comprehensive statute in order to prevent taxpayers and their helpers from gaining unlawful benefits by employing that variety of corrupt methods that is limited only by the imagination of the criminally inclined." *Id.* (internal quotation marks omitted).

In light of § 7212(a)'s broad scope, "even legal actions violate § 7212(a) if the defendant commits them to secure an unlawful benefit for himself or others." *United States v. Wilson*, 118 F.3d 228, 234 (4th Cir. 1997); *see also United States v. Bostian*, 59 F.3d 474, 479 (4th Cir. 1995) ("Even assuming that his posting of the enlarged copy of the lis pendens and the distribution of copies of the document violated no law, these actions clearly were intended to impede the government's efforts to sell the seized property at auction."); *Popkin*, 943 F.2d at 1540 (holding the evidence sufficient to support a § 7212(a) conviction when the the defendant attorney "create[d] . . . [a] . . . corporation for the purpose of enabling [a client] to disguise the character of illegally earned income and to repatriate it," and when the defendant "acted corruptly . . . because at least one

- 9 -

intent in creating the corporation was to secure an unlawful benefit for his client").

### 1. The government was not required to prove that Mr. Wood was aware of an IRS action or investigation.

In challenging the sufficiency of the evidence, Mr. Wood first argues that § 7212(a) requires the government to prove that he was aware of some pending IRS action or investigation when he "corruptly . . . obstruct[ed] or impede[d], or endeavor[ed] to obstruct or impede, the due administration of [the Internal Revenue Code]." 26 U.S.C. § 7212(a). In advancing this argument, Mr. Wood relies entirely on precedent from the Sixth Circuit.

In *United States v. Kassouf*, 144 F.3d 952 (6th Cir. 1998), a divided Sixth Circuit panel held that the language in § 7212(a), "corruptly . . . endeavors to obstruct or impede . . . the due administration of this title," should be construed similarly to the language in 18 U.S.C. § 1503. Section 1503 establishes criminal penalties for one who "corruptly . . . endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States . . . in the discharge of his duty . . . or endeavors to influence, obstruct, or impede, the due administration of justice." The Supreme Court has interpreted § 1503 to require the government to prove the element of knowledge of a pending judicial proceeding. *United States v. Aguilar*, 515 U.S. 593, 599 (1995). Because *Aguilar*'s interpretation of § 1503 was prevailing law before Congress enacted §

- 10 -

7212(a), and because of the "nearly identical language" in § 7212(a), *Kassouf* held that Congress intended that § 7212(a) similarly require the government to prove the element of knowledge of a pending IRS action.  144 F.3d at 958.

In our view, *Kassouf* is not persuasive.  Soon after that decision was published, it was "limited to its precise holding and facts" by *United States v. Bowman*, 173 F.3d 595, 600 (6th Cir. 1999).  *Bowman* affirmed a § 7212(a) conviction for deliberately filing false tax forms without evidence that the defendant was aware of a pending IRS action or investigation.

Additionally, *Kassouf*'s reasoning is questionable.  The terms of 18 U.S.C. § 1503, the obstruction of justice statute on which the Sixth Circuit panel relied, are substantially different than § 7212(a).  Section 1503's provision prohibiting endeavors "to influence, obstruct, or impede the due administration of justice," follows a long list of specific prohibitions of conduct that interferes with actual judicial proceedings.  In contrast, § 7212(a) criminalizes "obstruct[ing] or imped[ing] or endeavor[ing] to obstruct or impede, the due administration of this title."  A citizen may "obstruct[] or impede[], or endeavor[] to obstruct or impede . . . the due administration of [the Internal Revenue Code]," *id.,* without an awareness of a particular action or investigation, for example, by thwarting the annual reporting of income.  As the Eleventh Circuit has observed, "[t]he income tax laws require annual reporting of all income in the year earned.  The entire system is built on the basis of annual reporting, and any arrangement that permits

a taxable entity to avoid reporting income in the taxable year when earned has the effect of skewing the system and thus impeding or obstructing the due administration of the tax laws." *Popkin*, 943 F.2d at 1541 (emphasis omitted).

Finally, *Kassouf*'s holding has been rejected by other courts. For example, the Ninth Circuit has concluded that "the government need not prove that the defendant was aware of an ongoing tax investigation to obtain a conviction under § 7212(a)." *United States v. Massey*, 419 F.3d 1008, 1010 (9th Cir. 2005); *see United States v. Kelly*, 564 F. Supp. 2d 843, 844 (N.D. Ill. 2008) (concluding that "§ 7212(a)'s omnibus clause does not require a defendant act with knowledge that an IRS investigation is on-going or imminent"); *United States v. Willner*, No. 07 Cr. 183(GEL), 2007 WL 2963711, at *5 (S.D.N.Y. Oct. 11, 2007) (disagreeing with *Kassouf* and observing that "the plain language of [26 U.S.C. § 7212(a)] prohibits any effort to obstruct the administration of *the tax code*, not merely investigations and proceedings conducted by the tax authorities") (emphasis in original).

Accordingly, in light of the broad language in § 7212(a), a defendant may endeavor to obstruct or impede the broad and continuously operating tax code and thereby violate § 7212(a) regardless of whether he or she was aware of any pending IRS action or investigation. Mr. Wood's alleged lack of knowledge of such an action or investigation does not render his conviction invalid.

**2. The government established that the natural and probable effect of Mr. Wood's actions was to obstruct the operation of the Internal Revenue Code.**

Next, Mr. Wood argues that "the facts simply do not support that the natural and probable effect of [his] actions was to obstruct the due administration of the Internal Revenue Code." Aplt's Br. at 27. He contends that the government failed to show that he impeded the criminal prosecution of Mr. Ambort and his associates. Additionally, he contrasts his conduct with that of other defendants convicted of § 7212(a) charges. He observes that "[t]here were no attempts to unlawfully deceive or threaten so typical of endeavors to obstruct such as false refund claims, filing of false tax exempt status, false tax returns, false tax 1099 forms, false tax liens, attacks on IRS facilities and other threats against the IRS and its employees." *Id.*

Mr. Wood's argument is based on an unduly narrow reading of the statute. As the Fourth Circuit has noted, even lawful actions may violate § 7212(a) "if the defendant commits them to secure an unlawful benefit for himself or others." *Wilson*, 118 F.3d at 234.

Here, the alleged gaps in the government's evidence that Mr. Wood now emphasizes do not undermine the jury's finding that he "corruptly . . . obstruct[ed] or impede[d], or endeavor[ed] to obstruct or impede, the due administration of [the Internal Revenue Code]." 26 U.S.C. § 7212(a). In particular, neither the absence of any indication that Mr. Wood interfered with the

- 13 -

1998 criminal prosecution of Messrs. Ambort, Benson, and Lewis nor the lack of evidence that he filed false documents with the IRS undermines the government's evidence. That evidence showed that Mr. Wood acted to conceal his own income, as well as Mr. Ambort's and Mr. Benson's, through the means specified in the indictment: transferring MyCor funds from the Family Foundation account to nominee bank accounts; using those funds to pay Mr. Ambort's, Mr. Benson's and his own expenses; and establishing offshore debit card accounts for Mr. Ambort and Mr. Benson's friends and associates.

In light of § 7212(a)'s broad scope, *see Popkin*, 943 F.2d at 1540, the evidence is sufficient to establish that the natural and probable effect of Mr. Wood's actions was to obstruct or impede the operation of the Internal Revenue Code.

### 3. The government proved that Mr. Wood corruptly intended to obstruct or impede the IRS.

In a final challenge to the sufficiency of the evidence, Mr. Wood contends that a rational jury could not find that he intended to obstruct or impede the administration of the Internal Revenue Code. He suggests that the government's evidence supported the inference that he may have intended to violate federal securities laws but not that he intended to obstruct the IRS's operations. He observes that none of the government's witnesses testified that they heard him

discuss hiding money from the IRS and adds that he did not conceal the fact that he had not filed tax returns since the mid-1980s.

Again, we are not persuaded. In making its determination regarding a defendant's intent, the jury may consider circumstantial evidence. *United States v. Prows*, 118 F.3d 686, 692 (10th Cir. 1997); *see United States v. Johnson*, 971 F.2d 562, 566 (10th Cir. 1992) ("Direct evidence of a defendant's intent is seldom available. Intent can be proven, however, from surrounding circumstances.").

Here, the evidence offered by the government provides ample support for the jury's finding that Mr. Wood acted with the intent to secure an unlawful benefit for himself, Mr. Ambort, and Mr. Benson—non-payment of income taxes in violation of federal law. Even if no witness heard Mr. Wood express that intent, and even if he and his cohorts also intended to evade federal securities laws, the government established through an abundance of circumstantial evidence that he acted with the requisite intent to support his conviction under § 7212(a).

**B. Section 7212(a) is not unconstitutionally vague.**

Next, Mr. Wood argues for the first time on appeal that § 7212(a) is unconstitutionally vague. In support of that argument, he invokes the Due Process Clause of the Fifth Amendment.

"A penal law is void for vagueness if it fails to 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is

prohibited' or fails to establish guidelines to prevent 'arbitrary and discriminatory enforcement of the law.'" *City of Chicago v. Morales*, 527 U.S. 41, 64-65 (1999) (O'Connor, J., concurring) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)).  Because this argument was not raised in the district court, it is reviewable only for plain error.  *United States v. Robertson*, 473 F.3d 1289, 1291 (10th Cir. 2007)*;* Fed. R. Crim. P. 52(b).  "Plain error exists only where (1) there was error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings."  *Robertson*, 473 F.3d at 1291.

Mr. Wood contends that, as the district court interpreted the statute, § 7212(a) is not sufficiently defined so that ordinary people can understand what conduct is prohibited.  "Where a vagueness challenge does not implicate First Amendment freedoms, our review is limited to the application of the statute to the particular conduct charged."  *United States v. Michel*, 446 F.3d 1122, 1135 (10th Cir. 2006) (quotation marks omitted).  "[I]f the general class of offenses to which . . . [the statute is] directed is plainly within [its] terms, . . . [the statute] will not be struck down as vague, even though marginal cases could be put where doubts might arise."  *United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers,* 413 U.S. 548, 577 (1973) (quotation marks omitted).  A challenge for vagueness will fail if a reasonable person would have known from the language of

the statute that his or her conduct was at risk. *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988).

Vagueness arguments challenging § 7212(a) have been rejected by other courts. *See*, *e.g.*, *United States v. Kelly*, 147 F.3d 172, 176 (2d Cir. 1998); *United States v. Reeves*, 752 F.2d 995, 1001 (5th Cir. 1985). We agree with those decisions. The government charged Mr. Wood with deceptive techniques including using domestic non-interest-bearing bank accounts under his signature, offshore credit card accounts, and nominee entities to hide income and assets from the IRS. The jury found that Mr. Wood's actions were intended to obstruct or impede the administration of the tax code with the intent to gain an unlawful benefit, and § 7212(a) gives a reasonable person clear notice that these actions are prohibited. We conclude that § 7212(a) is not vague as applied to the particular conduct alleged in this case.

Mr. Wood also argues that, in addition to its unconstitutionally vague application to the specific facts of his case, § 7212(a) is facially invalid because it infringes First Amendment rights and chills the exercise of constitutionally protected First Amendment activities, such as resisting paying taxes. The nonpayment of taxes, however, is not speech or conduct protected by the First Amendment. *Cf. Reeves*, 752 F.2d at 1001 ("To interpret 'corruptly' as meaning 'with an improper motive or bad or evil purpose' would raise the potential of 'overbreadth' in [§ 7212(a)] because of the potential chilling effect on protected

activities. . . .  Where 'corruptly' is taken to require an intent to secure an unlawful advantage or benefit, the statute does not infringe on first amendment guarantees and is not 'overbroad.'") (citations omitted).  The government may seek criminal sanctions against those who illegally impede the due administration of this nation's tax laws.

**C.  Under plain error review, Mr. Wood is not entitled to relief on the grounds that the district court erred in instructing the jury on the elements of the § 7212(a) charge.**

Mr. Wood also argues that the district court erred in instructing the jury on the elements of a § 7212(a) violation.  He challenges instruction 18, which states, in part:

> Count I of the indictment charges that the defendant corruptly endeavored to impair or impede the due administration of the internal revenue laws through various acts over a period of time.
>
> To warrant a verdict of guilty on Count I [the § 7212(a) obstruction charge], *the government need not prove all of the alleged acts.  Rather, the government need prove only one of the alleged means* and that such act was a corrupt endeavor to impede the due administration of the internal revenue laws.
>
> Your vote, then, *need not be unanimous that the defendant committed all of the alleged acts. Your vote must be unanimous, however, that the defendant committed at least one of the acts. Moreover, your vote must be unanimous as to the same act.*  That is, you must all agree that the defendant committed a particular act and that, as alleged, the act amounted to a corrupt endeavor to impede the due administration of the internal revenue laws.

Rec. vol. 1, doc. 55 (Instr. no. 18) (emphasis added).

- 18 -

In explaining to the jury "the alleged means" that Mr. Wood had employed to "endeavor to impede the due administration of the internal revenue laws," *id.*, the district court provided the jury with the allegations of the indictment. In particular, instruction 14 stated, in part:

> The indictment in this case accuses the defendant . . . with the crimes of wrongfully endeavoring to obstruct and impede the due administration of the internal revenue laws and of willfully failing to file individual income tax returns. As to these crimes, the indictment reads as follows:

> At all times relevant to this indictment, [Mr. Wood] was a practicing attorney who filed no income-tax returns, and Ernest Glenn Ambort was the lead defendant in a pending criminal tax case . . . . Defendant [Mr. Wood] represented one of Ambort's co-defendants.

> Beginning in or around October 1998, . . . and continuing thereafter up to and including April 15, 2002, in the District of Utah, [Mr. Wood] . . . *did corruptly endeavor to obstruct and impede the due administration of the internal revenue laws by various means*, including using domestic non-interest bearing bank accounts under his signature, offshore credit-card accounts, and nominee entities to conduct business for Ernest Glenn Ambort, for the MyCor Investment Club . . . , for himself and for others, all for the purpose of hiding income and assets, as more particularly described below:

>> (a) Through about April 2001, [Mr. Wood], aware of the Internal Revenue Service's interest in Ambort's income and assets, used a local bank account for The Family Foundation to receive funds from participants in the MyCor Investment Club; rather than invest those funds, [Mr. Wood] spent them to keep the investment scheme going, to pay himself, and to pay the expenses of Ernest Glenn Ambort and others.

>> (b) During this same period, [Mr. Wood] routed expenses through nominee bank accounts . . .

- 19 -

> (c) During the same period, [Mr. Wood] opened offshore credit-card accounts for himself and for others, received the credit-card statements at his law-office address, and paid on the accounts from his domestic bank accounts.
>
> (d) [Mr. Wood] *failed to file his own federal income-tax returns when due on April 16, 2001 and April 15, 2002, respectively, for the 2000 and 2001 tax years.*

*Id.* at 77-78 (Instr. no. 14) (emphasis added).

Mr. Wood focuses on the highlighted portions of instructions 18 and 14. He contends that read together, these instructions erroneously allowed the jury to find that failing to file income tax returns in violation of 26 U.S.C. § 7203 would alone be sufficient grounds for a § 7212(a) conviction.

Mr. Wood's counsel did not object to these jury instructions at trial. Accordingly, we review the challenged instructions for plain error. *See Robertson*, 473 F.3d at 1291; Fed. R. Crim. P. 52(b). Mr. Wood must now establish (1) error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings. *Robertson*, 473 F.3d at 1291.

Upon review of the applicable law, we conclude that Mr. Wood has made a plausible argument for the first two components of plain error review. The instructions do allow the jury to find that Mr. Wood's mere failure to file tax returns constituted a "corrupt[] endeavor to obstruct and impede the due

- 20 -

administration of the internal revenue laws." Rec. vol. 1, doc. 55 (Instr. 14). As Mr. Wood contends, that is a questionable proposition. The willful failure to file tax returns is addressed in a different section of the Internal Revenue Code, 26 U.S.C. § 7203. The government has identified no language in the Code suggesting that the same conduct constituting a violation of § 7203 (a misdemeanor) may also constitute a violation of § 7212(a) (a felony).

Moreover, the government has provided us with no case authority directly supporting the jury instructions' theory that the failure to file under § 7203 can constituted a "corrupt[] endeavor to obstruct and impede the due administration of the internal revenue laws" under § 7212 (a). Rec. vol. 1, doc. 55 (Instr. 14). Although the government seeks to defend the jury instructions in its appellate brief, the cases it cites all involve various failures to act that have been deemed sufficient to support convictions under other statutes, not § 7212(a). *See* Aple's Br. at 36-39.

Nevertheless, the third component of the plain error inquiry presents Mr. Wood with a much higher hurdle. "In the ordinary case, to meet this standard an error must be 'prejudicial,' which means that there must be a reasonable probability that the error affected the outcome of the trial." *United States v. Marcus*, --- S. Ct. ----, No. 08-1341, 2010 WL 2025203, at *3 (May 24, 2010). The defendant's burden is to "satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is sufficient

to undermine confidence in the outcome of the proceeding." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) (internal quotation marks omitted).

When, as here, a defendant contends that the trial court's instructions allow the jury to convict on alternative theories, one of which is valid and one of which is legally erroneous, the reasonable-probability, plain-error inquiry differs markedly from the standard that we apply when a defendant objects at trial. In the latter instance, a general verdict must be set aside "when [it] is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *United States v. Yates*, 354 U.S. 298, 312 (1957), *overruled in part on other grounds by Burks v. United States*, 437 U.S. 1 (1978), and *Griffin v. United States*, 502 U.S. 46 (1991)[1]; *see also United States v. Miller*, 84 F.3d 1244, 1257 (10th Cir. 1996) ("Because the instruction defining one of the two alternative grounds for conviction was legally erroneous, we must reverse the conviction unless we can determine with absolute certainty that the jury based its verdict on the ground on which it was correctly instructed."), *overruled in part on other grounds by United States v. Holland*, 116 F.3d 1353, 1359 n.4 (10th Cir. 1997). In contrast, when the defendant does not object, the *Yates* impossible-to-tell-warrants-reversal standard does not apply.

---

[1] In *Griffin*, 502 U.S. at 51-60, the Supreme Court limited *Yates*'s holding to situations in which one of the possible bases of conviction was legally insufficient as opposed to factually insufficient.

Instead, under the third component of the plain error inquiry, we must "examin[e] . . . the impact of the district court's instructional error on the outcome of the case, i.e., whether the error affected [the defendant's] substantial rights. *United States v. Duran*, 133 F.3d 1324, 1333 (10th Cir. 1998) (internal quotation marks omitted). The defendant must show that there is a reasonable probability that the jury would have reached a different result if given the correct instruction. *See Dominguez Benitez*, 542 U.S. at 83. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Hasan*, 526 F.3d 653, 665 (10th Cir. 2008) (internal quotation marks omitted).

In making this reasonable-probability inquiry, we may consider the strength of the government's case. *See United States v. Draper*, 553 F.3d 174, 182 (2d Cir. 2009) (concluding that there was no evidence to support an element on which the district court had failed to instruct the jury and that, as a result, there was "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different") (alteration and internal quotation marks omitted). We may also consider whether the prosecutor emphasized the erroneous instruction in closing argument, *see United States v. Rush-Richardson*, 574 F.3d 906, 912 (8th Cir. 2009), and whether, during its deliberations, the jury asked a question suggesting that it had considered the erroneous instruction, *see id.* at 912-13.

Here, assuming without deciding that the district court committed (1) error

in instructing the jury that (2) is plain, Mr. Wood has not established a reasonable probability that he would have been acquitted on the § 7212(a) charge if the jury had been instructed as he now requests. In support of that conclusion, we first note that the government's evidence supporting the three other means of "corruptly endeavor[ing] to obstruct and impede the due administration of the internal revenue laws," Rec. vol. 1, doc. 55 (Instr. 14), was quite strong. There was essentially no dispute that Mr. Wood (1) used the Family Foundation account to pay himself and to the pay the expenses of Mr. Ambort and Mr. Benson; (2) routed those expenses through nominee bank accounts; and (3) used offshore credit card accounts to pay those expenses. Indeed, at sentencing the district court remarked that the evidence on the § 7212 charge was "overwhelmingly persuasive . . . that [Mr. Wood] systematically and with some sophistication" assisted Mr. Ambort and Mr. Benson with "being tax evaders and helping others be tax evaders." Rec. vol. 2, at 926.

Additionally, there is no indication that the prosecution described Mr. Wood's failure to file as an essential component of the § 7212(a) charge. For example, in his closing argument, the prosecutor first explained that charge by stating that "our burden is to prove that, indeed, the defendant is a helpful guy. He made available the resources that he had at hand, non-interest bearing bank accounts in the name of the Family Foundation." *Id.* at 853. The prosecutor did

not suggest that the jury could convict Mr. Wood of the § 7212(a) violation merely by finding that he had failed to file tax returns for 2000 and 2001.

In his subsequent remarks, the prosecutor did mention Mr. Wood's failure to file tax returns. However, he again did not suggest that this failure, standing alone, was sufficient to support the § 7212(a) charge. Instead, he discussed Mr. Wood's failure to file in the context of many other acts that impeded the administration of the Internal Revenue Code:

> [Y]ou heard in the instructions that the corrupt endeavor, that part of the corrupt endeavor has to occur after January the 10th of 2001. You'll see from the evidence that the defendant was prepared and ready through 2002 to help his friends fly with him under the I.R.S.'s radar. In April he failed to file his 2001 tax return. Through April of 2001 he is paying on John Benson's home in Draper. Also through June of 2001 he is paying other expenses of Ambort's staff and others. . . . According to one private and very cryptic e-mail . . . in June of 2001 the defendant is still anticipating money coming back from Mycor, according to the e-mail, and he intends to hide it from what he calls the dragon or the beast, which is a reference to the government who is interested in taxing the funds.

*Id.* at 866.

Accordingly, in light of (a) the strength of the evidence supporting the government's contention that Mr. Wood corruptly endeavored to obstruct and impede the due administration of the internal revenue laws by means other than merely failing to file tax returns for 2000 and 2001; and (b) the prosecution's emphasis on these other means in its presentations to the jury, Mr. Wood has failed to establish a reasonable probability of a different result sufficient to

- 25 -

undermine confidence in the outcome of the proceeding. *Dominguez Benitez*, 542 U.S. at 83. Accordingly, we reject his challenge to the § 7212(a) conviction based on the alleged error in the jury instructions.

**D. The district court plainly erred in imposing the $250,000 fine.**

Mr. Wood next contends that he is entitled to resentencing because the district court erred when it imposed an unreasonably high fine of $250,000. As Mr. Wood concedes, he did not object to the imposition of the fine in the district court proceedings, and our review is therefore for plain error. *See Robertson*, 473 F.3d at 1291.

Under 18 U.S.C. § 3571(a), "[a] defendant who has been found guilty of an offense may be sentenced to pay a fine." The following subsection sets forth the maximum fine for various classes of offenses. *See id.* § 3571(b). For felonies (such as Mr. Wood's § 7212(a) conviction), the maximum fine is $250,000. *See id.* § 3571(b)(3). For class A misdemeanors (such as Mr. Wood's two § 7203 convictions), the maximum is $100,000. *See id.* § 3571(b)(5).

Section 3572 sets forth the factors that the sentencing court must consider in imposing a fine upon an individual defendant:

> (1) the defendant's income, earning capacity, and financial resources;
> (2) the burden that the fine will impose upon the defendant, any person who is financially dependent on the defendant, or any other person (including a government) that would be responsible for the welfare of any person financially dependent on the defendant, relative to the burden that alternative punishments would impose;
> (3) any pecuniary loss inflicted upon others as a result of the offense;

(4) whether restitution is ordered or made and the amount of such restitution;

(5) the need to deprive the defendant of illegally obtained gains from the offense;

(6) the expected costs to the government of any imprisonment, supervised release, or probation component of the sentence;

(7) whether the defendant can pass on to consumers or other persons the expense of the fine.

18 U.S.C. § 3572(a). The sentencing court must also consider the factors set forth in 18 U.S.C. § 3553(a), which governs the imposition of sentences of imprisonment as well as fines.

The determination of the amount of the fine is also addressed by the advisory United States Sentencing Guidelines (USSG). Section 5E1.2(a) provides that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." USSG § 5E1.2(a). Thus, the defendant has the burden of proving that he is unable to pay a particular fine. *United States v. Ballard*, 16 F.3d 1110, 1114 (10th Cir. 1994). Section 5E1.2(c) sets forth minimum and maximum fines based on the offense level.

Here, as we have noted, the PSR determined the offense level to be twenty-eight, which resulted in an advisory Guidelines range of $12,500 to $125,000. Upon review of Mr. Wood's assets and liabilities, the PSR further concluded that "[b]ased on "[Mr. Wood's] financial profile, to include significant tax debt, it appears that he does not have the ability to pay a fine." Rec. vol. 3, at 14, ¶ 58.

In its sentencing memorandum, the government stated that "[a] fine at the low end of the Guideline range is . . . appropriate." Rec. vol. 1, at 150.

Despite these recommendations in the PSR and the government's sentencing memorandum, the district court imposed a total fine of $250,000, twice the maximum amount under the advisory Guidelines. Apparently, the court believed that the $250,000 fine was within the Guidelines. In response to the prosecutor's observation that $250,000 was above the Guidelines maximum, the court responded, "Well, let's put it within the [G]uidelines[,]" and divided the $250,000 among the three offenses ($100,000 on the § 7212(a) charge and $75,000 on each of the § 7203 convictions).

In *United States v. Smith*, 919 F.2d 123, 126 (10th Cir. 1990), a decision issued under the mandatory Guidelines scheme that preceded *United States v. Booker*, 543 U.S. 220 (2005), this circuit concluded that the imposition of a $225,000 fine constituted plain error warranting resentencing. The maximum amount of the fine under the Guidelines was $50,000. We reasoned that "there was nothing in th[e] record to indicate that the court intended to depart upward or had a rationale for doing so." *Smith*, 919 F.2d at 126.

In a more recent, post-*Booker* decision, the Second Circuit has reached a similar conclusion. *See United States v. Elfgeeh*, 515 F.3d 100, 136-37 (2d Cir. 2008). There, the maximum amount under the Guidelines was $500,000, but the district court imposed a fine of $1.25 million (still less than the statutory

maximum).  In concluding that the district court had plainly erred and that resentencing was warranted, the court noted that (1) the defendant was neither given notice that such a large fine was contemplated nor afforded an opportunity to be heard on the amount of the fine; (2) the government did not seek an above-Guidelines fine; (3) the PSR determined that the defendant "would not be able to pay the fine in any amount"; (4) the district court did not make any findings regarding the defendant's ability to pay the fine; and (5) the district court did not acknowledge at sentencing that it was imposing a fine above the Guidelines range.  *Id.* at 136-37.  Accordingly, "the imposition of a fine of more than double the maximum recommended by the Guidelines . . . constituted a plain error that substantially impacted the fairness, or at least the appearance of fairness, of the sentencing proceeding."  *Id.* at 137; *see also United States v. Mordini*, 366 F.3d 93, 95 (2d Cir. 2004) (finding plain error in the imposition of fine that was "nearly double the maximum fine available under the sentencing guidelines"); *United States v. Quintieri*, 306 F.3d 1217, 1235 (2d Cir. 2002) (stating that "[b]ecause the district court imposed a fine above the Guideline range without explaining its reason for the departure, the $175,000 fine was clearly imposed in error" and that "failing to correct the error would seriously affect the fairness of the judicial proceedings").

These decisions support Mr. Wood's contention that the district court plainly erred in imposing the $250,000 fine.  As in those cases, the district court

- 29 -

gave no explanation of its variance from the Guidelines maximum, apparently because it mistakenly believed that the fine was within the Guidelines. Although the court concluded that Mr. Wood did have "the ability to pay [the $250,000 fine] because it believed that Mr. Wood had "hidden money," Rec. vol. 2, at 930, it failed to set forth "the specific reason for the imposition of a sentence different from [the Guideline range]." *See* 18 U.S.C. § 3553(c)(2). The district court's general observation that Mr. Wood had the ability to pay a $250,000 fine does not adequately explain why the PSR's conclusion—that his tax debt and his financial profile indicated that he was unable to pay a fine—was incorrect. In addition, the district court failed to explain why it discounted the government's recommendation that it impose a fine at the low end of the Guidelines range.

We therefore conclude that the district court's imposition of the $250,000 fine constituted (1) error, (2) that was plain, (3) that affected Mr. Wood's substantial rights, and (4) that seriously affected the fairness, integrity or public reputation of judicial proceedings. *Robertson*, 473 F.3d at 1291. Mr. Wood is entitled to resentencing as to the amount of the fine.

**E. The district court did not err in imposing $56,852 in restitution**.

Finally, Mr. Wood challenges the imposition of $56,852 in restitution. As we have noted, in imposing that amount, the district court deferred to the government's request at sentencing. The government explained that $56,852 was "20 percent of the amount of expenditures that we could individually attribute to

- 30 -

[Mr. Wood], on behalf of [Mr. Wood], and on behalf of his family, for those three years, '99, 2000, and 2001." Rec. vol. 2, at 923.

Mr. Wood now contends that the district court erred in imposing restitution because the $56,852 had not been previously determined by the IRS to constitute his income tax obligation for the years at issue and because "the amount ordered has not been acknowledged, conclusively established in the criminal proceedings or finally determined in civil proceedings." Aplt's Br. at 52. At sentencing, Mr. Wood objected to the amount of restitution. We therefore review the district court's factual findings for clear error and consider de novo "the legality of a restitution order." *United States v. Griffith*, 584 F.3d 1004, 1019 (10th Cir. 2009).

In support of his argument, Mr. Wood relies on *United States v. Franks*, 723 F.2d 1482, 1487 (10th Cir. 1983). There, we vacated the imposition of $100,000 in restitution for unpaid taxes. As authority for its order, the district court had relied upon 18 U.S.C. § 3561, a statute that has since been repealed. The defendant and the government agreed that "the figure of $100,000 was arbitrarily set by the court, and that there was no factual determination made at the trial of this case of the amount of tax that the defendant might owe the United States." 723 F.2d at 1487.

We are not persuaded by Mr. Wood's argument that, in light of *Franks*, the district court erred in imposing restitution. Here, unlike *Franks,* the government

- 31 -

does not concede that amount of restitution was arbitrarily imposed. Instead, the government contends that the restitution order was authorized under the current statutory scheme and supported by the facts presented to the district court. We agree with the government.

As to the statutory scheme, we note that the district court imposed restitution as a condition of supervised release pursuant to 18 U.S.C. § 3583(d). Section 3583(d) authorizes the sentencing court to impose such conditions if they (1) are "reasonably related" to relevant sentencing factors; (2) "involve[] no greater deprivation of liberty than is reasonably necessary" for the purposes of sentencing; (3) are "consistent with any pertinent policy statements issued by the Sentencing Commission[;]" and (4) are "set forth as . . . discretionary condition[s] of probation in section 3563(b)." In turn, § 3563(b)(2) authorizes a sentencing court to "make restitution to a victim of the offense." We agree with the Fifth Circuit that, "[u]nder the current statutory scheme, restitution may be imposed if done so as a condition of supervised release in a criminal tax case, even in the absence of a prior definitive determination or adjudication of the amount of taxes owed, and if limited to losses from the crime of conviction." *United States v. Nolen*, 523 F.3d 331, 333 (5th Cir. 2008).

As to the facts at hand, the government's request for the imposition of restitution is supported by evidence of Mr. Wood's income during the years at issue. Mr. Wood has offered no persuasive evidence or argument suggesting that

the government's figures are erroneous. We therefore conclude that the amount of restitution is reasonably related to the relevant sentencing factors and comports with the other factors set forth in the governing statute, 18 U.S.C. § 3583(d).

Thus, the district court did not err in requiring Mr. Wood to pay $56,852 in restitution.

### III.  CONCLUSION

In order to establish a violation of 26 U.S.C. § 7212(a), the government was not required to prove that Mr. Wood was aware of a pending IRS action or investigation. Because the government established that Mr. Wood corruptly endeavored to obstruct or impede the due administration of the internal revenue laws by seeking to conceal his own income and the income of his associates, and because the statute is not unconstitutionally vague, we AFFIRM Mr. Wood's § 7212(a) conviction.

The district court's order imposing $56,852 in restitution was authorized by the governing statutes and the evidence in the record, and we therefore AFFIRM that part of Mr. Wood's sentence. However, the district court plainly erred in imposing a $250,000 fine, and we therefore VACATE the fine and REMAND for resentencing consistent with this order and judgment.

Entered for the Court,

Robert H. Henry
United States Circuit Judge