UNITED STATES of America,
Plaintiff–Appellee,

v.

James G. BRYAN, James A. Hearn, Eugene R. Jackson, John Worley, and Julian Malcomson, Defendants–Appellants.

Nos. 88–1327, 87–1962.

United States Court of Appeals,
Fifth Circuit.

Feb. 22, 1990.

Rehearing Denied (as to two defendants)
March 26, 1990.

Phil Pollan, John Dee Evans, Dallas, Tex., court-appointed for Hearn.

David M. Pruessner, Thomas W. Mills, Jr., Dallas, Tex., for Worley.

Marvin Collins, U.S. Atty., Ft. Worth, Tex., Jack Curtis Williamson, Asst. U.S. Atty., David G. Barger, Dept. of Justice, Tax Div., Crim. Section, David Farnham, William S. Rose, Jr., Attys., Karen M. Quesnel, Gary R. Allen, Chief, Appellate Section, Robert E. Lindsay, Washington, D.C., for U.S.

Joseph A. Hoffman, Dallas, Tex., court-appointed, for Eugene R. Jackson.

Ronald Owen Holman, Dallas, Tex., Court-appointed, for Julian Malcomson.

Bennett A. Midlo, Vinson & Elkins, Houston, Tex., court-appointed, for James G. Bryan.

Before GOLDBERG, POLITZ, and JONES, Circuit Judges.

POLITZ, Circuit Judge:

James G. Bryan, James A. Hearn, Eugene R. Jackson, Julian Malcomson, and John Worley challenge their convictions for various violations involving the promotion and sale of fraudulent tax shelter schemes. With the exception of the double jeopardy challenge made by Bryan to the conspiracy count, 677 F.Supp. 482, we affirm. We remand Bryan's double jeopardy challenge for entry of an order of dismissal as discussed herein.

*Background*

A grand jury for the Northern District of Texas returned an indictment in April 1987 charging 22 defendants, including the five appellants, with illegal activities resulting from their involvement in the promotion and sale of fraudulent tax shelters. All defendants were charged with conspiring to defraud the government by impeding the lawful operation of the Treasury Department, 18 U.S.C. § 371. All defendants except Malcomson were charged with various counts of willfully aiding and assisting in the preparation or presentation of false tax returns, 26 U.S.C. § 7206(2). Appellants were tried to a jury which returned verdicts of guilty on all counts against all defendants.

The indictment charges that in 1981 Bryan formed the United States Tax Planning Service (USTPS) and devised a variety of tax shelters which, in effect, crossed the line separating tax avoidance from tax evasion. The tax schemes were marketed at seminars and were sold by USTPS offices and licensees throughout the nation. The schemes were based on the creation of false income tax deductions through the fraudulent: (1) contributions to the Congregational Church of Human Mortality; (2) purchases of malpractice and other insurance from the Professional Liability Insurance Corporation; and (3) use of commodities straddles. The program involved channeling the transactions through a tax-friendly country, usually the Cayman Islands, the creation of a false paper trail of invoices and receipts, and the return to the client-taxpayer of the sums involved, less the fees paid to USTPS.

At various times and in various capacities, Hearn, Jackson, Malcomson, and Worley joined in the development, promotion, and sale of the schemes. Hearn, an accountant, operated the Dallas USTPS office, later known as Worldwide Capital Management (WCM). Worley, an attorney, worked at the Dallas office. Jackson was a broker with Conti–Commodities Services, Inc. and had significant contact with the Dallas office. Malcomson operated the USTPS franchise in St. Paul, Minnesota.

*Analysis*

I. Double Jeopardy

Appellants raise multiple issues on appeal. We first address the one issue which merits a reversal, Bryan's plea of double jeopardy.

In March 1985 a grand jury for the District of Oregon handed up a 51–count indictment charging Bryan and three others with, *inter alia,* conspiracy to defraud the United States by impairing and impeding the lawful functions of the Treasury Department, 18 U.S.C. § 371. Bryan was convicted on all counts. In January 1989 the Ninth Circuit Court of Appeals vacated

Bryan's convictions and remanded the case for a determination whether he improperly was denied access to certain documents. *United States v. Bryan*, 868 F.2d 1032 (9th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 167, 107 L.Ed.2d 124 (1989).

The instant indictment charges Bryan and 21 other defendants with, *inter alia*, conspiracy to defraud the United States by impairing and impeding the lawful functions of the Treasury Department, 18 U.S.C. § 371. Both indictments also charge tax fraud in violation of 26 U.S.C. § 7206(2); the Oregon indictment has 28 counts of tax fraud, the Texas indictment contains 24 such counts.

The Oregon indictment covers the period from the mid-1970's until December 31, 1984; the Texas indictment charges a conspiracy from the beginning of 1981 until the end of 1985.

Bryan moved for dismissal of the present conspiracy count, urging that the double jeopardy clause of the fifth amendment prevents his retrial on the conspiracy count. The district court denied his motion but severed Bryan's trial on the conspiracy count and stayed that action pending the appeal. We consolidated Bryan's appeal from the ruling on the double jeopardy motion with his appeal on the merits.

■ Whether the constitutional prohibition against twice placing a person in jeopardy bars the instant conspiracy indictment is determined by deciding whether the two indictments charge separate and distinct conspiracies, or two parts of the same conspiracy. We have developed guidelines and procedures to assist us in that determination. In *United States v. Stricklin*, 591 F.2d 1112 (5th Cir.), *cert. denied*, 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979), we held that once a defendant establishes a *prima facie* nonfrivolous double jeopardy claim the burden shifts to the government to demonstrate by a preponderance of the evidence that the indictment charges a crime separate from that for which the defendant previously was placed in jeopardy. The district court found that Bryan made the requisite showing, but concluded that the government had established by a

preponderance of the evidence that he was involved in two separate conspiracies to defraud the United States with his tax schemes.

■ The essential issue in a double jeopardy analysis involving conspiracy is whether one, or more than one, agreement existed. *United States v. Levy*, 803 F.2d 1390 (5th Cir.1986). The Supreme Court has long recognized that multiple conspiracies require multiple agreements. *Braverman v. United States*, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942). In *United States v. Marable*, 578 F.2d 151, 154 (5th Cir.1978), we enumerated five factors to be considered in the single/multiple agreement analysis:

(1) the time-frames of the charged conspiracies; (2) the persons acting as conspirators; (3) the statutory offenses charged in the indictments; (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and the scope of the activity which the government sought to punish in each case; and (5) places where the events alleged as part of the conspiracy took place.

■ Viewing the facts of record in light of the *Marable* factors we are persuaded that Bryan was involved in one continuous conspiracy. An examination of the time factor reveals a significant overlap of four years. The cast of characters changes but Bryan remains the central and essential figure in both indictments. The Oregon indictment named Bryan and three others. Two of those are joined with Bryan and 19 others in the subsequent Texas indictment. The government leans heavily on the 19 other defendants indicted in Texas to establish a sufficient dissimilarity. The government attempts to shift the focus of our inquiry from an exploration of the nature of the agreement to a body count. This we decline to do, but instead echo our earlier observation that when considering the single versus multiple conspiracy conundrum, "[w]hether one uses similes of wheels, hubs, or spokes, the result should be the same. A mere shuffling of personnel in an otherwise on-going operation with an ap-

parent continuity will not, alone, suffice to create multiple conspiracies." *United States v. Nichols*, 741 F.2d 767, 772 (5th Cir.), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1186, 84 L.Ed.2d 333 (1985).

As to the third factor, the similarities in the statutory offenses are obvious. In addition to alleging violations of the identical statutes, the overt acts charged are markedly similar, if not identical. Both indictments target a single conspiracy to sell illegal tax schemes and they detail marketing seminars, the deposit of funds in the Cayman Islands, and the formation of various business entities to facilitate the activity. Finally, there are parallels in the locations of the activities, to-wit, seminars held in several United States cities and the routing of funds through financial institutions in the Cayman Islands. We conclude that the two indictments charge separate parts of one conspiracy.

■ That conclusion ends our double jeopardy inquiry notwithstanding that the convictions under the Oregon indictment were vacated and remanded to the district court with instructions to review for possible breaches of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and/or Fed.R.Crim.P. 16(a)(1)(C). The Oregon district court may order a new trial; or it may find neither a *Brady* nor rule violation, in which event it might decide to reinstate the convictions. Under either scenario, Bryan would have been placed in jeopardy for conspiracy by the Oregon indictment, therefore, he cannot again be placed in jeopardy for that conspiracy.

## II. Venue

■ The next issue raised is a challenge to venue. Bryan contends that the 13 substantive counts charged in the indictment should be dismissed for lack of proper venue, correctly recognizing that an accused has the right to be tried in the district in which the alleged crime was committed. U.S. Const. amend. VI; Fed.R. Crim.P. 18. When challenged, the government has the burden of establishing venue by a preponderance of the evidence. *Unit-*

*ed States v. Parrish*, 736 F.2d 152 (5th Cir.1984). In the case at bar the government has acquitted that evidentiary burden. The challenged counts charge Bryan with knowingly and willfully aiding and assisting in the preparation or presentation of fraudulent tax returns in violation of 26 U.S.C. § 7206(2). By virtue of 18 U.S.C. § 3237(a), venue properly lies where a false statement is prepared and signed, even though received and filed elsewhere. *United States v. Slutsky*, 487 F.2d 832, 839 (2d Cir.1973). The tax returns described in Counts 2, 3, 5, 6, 7, 8, 14, 21, and 25 were prepared by Tom Garner and Associates, Inc., whose address is shown as 8035 E. R.L. Thornton Freeway, Suite 610, Dallas, Texas 75228. Similarly, the offenses charged in Counts 4, 16, 22, and 23 were begun, continued, or completed within the Northern District of Texas. Bryan is accused of providing the false documents and information which facilitated the preparation of these returns. He properly is charged with aiding and assisting in the preparation of false tax returns in the Northern District of Texas. *United States v. Slutsky.* Venue is proper herein.

## III. Expert Testimony

The trial court excluded the tendered expert testimony of Dr. William E. Streng, which was proffered by the defendants to establish that some confusion existed relative to the tax treatment to be accorded to commodities transactions. By this defendants would challenge the willfulness element required by 26 U.S.C. § 7206(2).

■ The decision to admit or exclude expert testimony is entrusted to the discretion of the trial court. *Jon–T Chemicals, Inc. v. Freeport Chem. Co.*, 704 F.2d 1412 (5th Cir.1983). We find no abuse of discretion. The tax shelters devised by Bryan and promoted by Hearn, Jackson, and Malcomson were sham transactions lacking a valid business purpose. The evidence reflects that in many cases there were no actual trades, but only prearranged transactions in a non arm's-length setting guaranteeing a loss, or the simple assignment of a loss.

In certain cases uncertainty in the application of the law relative to legitimate commodities straddles might be relevant to the willfulness element of the substantive offenses. Had the jury been required to assess such an uncertainty, expert testimony might have proven helpful. In such a setting the denial of that evidence likely would have been an abuse of discretion. But that, however, is not the situation in the case at bar.

There are significant differences between the commodities straddles used as tax deferral plans in the 1970s and the prearranged commodities shams presented in this case. In a traditional straddle one commits to either deliver or receive a specified quantity of a commodity on a future date at a price fixed by the participants. One committing to deliver pursuant to a futures contract is a seller and has a short position; one committing to receive is a buyer and has a long position. A straddle is established by simultaneously holding a long position in one delivery month and a short position in another delivery month. The key to the straddle is to liquidate to the loss-bearing position in the first tax year in which the taxpayer needs offsets to other gains, and defer the gain-bearing position to the following tax year.

By contrast, the commodities shams devised by Bryan were prearranged transactions which permitted the taxpayer to purchase a taxable loss at no actual risk. Further, in some instances foreign corporations were used to hide the gain in the short leg of the transaction. In addition, there was evidence that, in some instances, there were no actual trades but only the creation of paperwork to document fictitious trades.

In that setting, the trial court did not abuse its discretion in declining to permit expert testimony about the legal status of legitimate straddles.

The court also properly excluded expert opinion relative to the other tax schemes, absent a showing that any of the defendants relied thereon. *United States v. Daly,* 756 F.2d 1076 (5th Cir.), *cert. denied,* 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 558 (1985). There is no support in the record for the proposition that any defendant relied on the advice or opinions of Dr. Streng, or of any other expert agreeing with his views, relative to the validity of deductions ostensibly generated by contributions to the Congregational Church of Human Mortality, or for payment of insurance premiums to the Professional Liability Insurance Corporation. Indeed, the record contains testimony which the jury was free to credit, reflecting that the defendants were aware when they acted that the tax schemes were illegal.

IV. Variance Between Indictment and Evidence

Two of the defendants, Hearn and Jackson, maintain that certain of their convictions must be reversed because there is a variance between the indictment and the proof offered at trial. A variance, warranting reversal, exists when the evidence establishes facts different from those alleged in the indictment. *Dunn v. United States,* 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979). The indictment charges fraud arising from sham commodities transactions. The evidence reflected trading in treasury-bill (T–Bill) futures. Hearn and Jackson contend that T–Bills are not and cannot be said to be commodities. Although we do not necessarily disagree with that proposition, we reject it as relates to trades in T–Bill futures.

Albeit the traditional commodities futures markets involve items such as corn, wheat, soybeans, and pork bellies, in recent years the commodities futures markets have developed *trading capabilities in contracts for T–Bills and foreign currency.* The Commodity Futures Trading Commission Act of 1974, Pub.L. No. 93–463 (codified in 7 U.S.C. §§ 1–24 (1982), expanded the definition of a commodity to include: " ... all services, rights and interests in which contracts for future delivery are presently or in the future dealt in." Courts confronting the issue have recognized that all futures contracts are regarded as commodities regardless of whether that which is deliverable to the futures

74

contract is commonly thought of as a commodity. *Messer v. E.F. Hutton*, 847 F.2d 673 (11th Cir.1988), and *Conroy v. Andeck Resources*, 137 Ill.App.3d 375, 92 Ill.Dec. 10, 484 N.E.2d 525 (1985). Futures contracts to buy T–Bills are thus the same as futures contracts to buy wool.

■ Additionally, several witnesses testified that Hearn and his associates at WCM designed and sold "commodities programs" as part of the clients' tax plans. Witnesses also testified that Jackson had been involved actively in the execution of their commodities transactions. The government's proof that Hearn and Jackson promoted and sold commodities schemes involving futures contracts in T–Bills is not in variance with the indictment.

V. Worley

Upon initial consideration the argument of John Worley that he merely acted as an attorney who provided tax advice, and that he did not conspire to commit tax fraud or any other criminal offense, appeared to have merit. But that contention did not withstand a close examination of the evidence, viewed through the lens which an appellate court must use in reviewing a jury's action. We have long recognized that "it is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government to support it." *United States v. Williams*, 809 F.2d 1072, 1094 (5th Cir.), *cert. denied*, 484 U.S. 896, 108 S.Ct. 228, 98 L.Ed.2d 187 (1987), (quoting *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942)). Measuring the prosecutor's evidence against this backdrop, we conclude that the record supports Worley's conviction.

■ Worley's participation went beyond the mere rendering of tax advice. Witnesses testified that he spoke at Balliett seminars to generate clients for WCM and that he attended licensee seminars at which the tax schemes were discussed. One witness attested to a seminar in the Cayman Islands, attended by Worley, where it was disclosed that the commodities transactions would involve the assignment of losses to the taxpayer and the gains to a foreign company so as to generate a taxable loss on paper. Hearn and a WCM employee testified that they had explained to Worley the operation of the foreign corporations and that they had discussed various methods to secretly return offshore gains to a client. Worley participated in the decision to create an offshore corporation for the clients and discussed how to avoid discovery or tracing through postal cancellation markings. It was not necessary that Worley sign or actually prepare a tax return in order to be guilty of willfully aiding and assisting in the preparation of false returns. *United States v. Wolfson*, 573 F.2d 216 (5th Cir.1978). It is well settled that 26 U.S.C. § 7206(2) does not apply solely to tax return preparers. From the evidence adduced the jury reasonably could infer that Worley willfully aided and assisted in the preparation of a false return.

VI. Jackson

■ Jackson maintains that there was insufficient evidence to support his conviction of conspiracy and of the substantive counts. The record does not support his contention. Testimony reflected that Jackson was more than a mere bystander to the commodities transactions. He traveled to the Cayman Islands to meet Bryan. He spoke at USTPS client seminars. In addition, he lectured at licensee seminars about commodities futures markets, and referred clients for tax planning services. One WCM employee testified that Jackson knew and understood all aspects of the commodities transactions. Clients sent their funds for the commodities programs directly to Jackson. Moreover, one client personally delivered $55,000 to Jackson. The record contains sufficient evidence to support the verdicts as to Jackson.

Finally, Jackson maintains that his trial should have been severed because he was only involved in the commodities transactions and, accordingly, he was prejudiced by evidence of other violations.

We begin by reminding of the general rule that persons indicted together are to be tried together. *United States v. Harrelson*, 754 F.2d 1153, 1174 (5th Cir.), *cert. denied*, 474 U.S. 908, 106 S.Ct. 277, 88 L.Ed.2d 241; 474 U.S. 1034, 106 S.Ct. 599, 88 L.Ed.2d 578 (1985). District courts have the discretion to order a severance "[i]f it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants...." Fed.R.Crim.P. 14. Absent an abuse of discretion, the decision of the district court will not be disturbed.

█ To demonstrate an abuse of discretion by the district court Jackson must establish "that he was unable to obtain a fair trial without severance and that he suffered compelling prejudice which the trial court could not prevent." *United States v. Wilson*, 657 F.2d 755, 765 (5th Cir.1981), *cert. denied*, 455 U.S. 951, 102 S.Ct. 1456, 71 L.Ed.2d 667 (1982). We conclude that Jackson has not met this burden. By carefully worded jury instructions the district court effectively neutralized the possibility of prejudicial effect resulting from spillover evidence. Further, the district court took pains to aid the jury in distinguishing between the defendants. The potential for prejudice was averted by the trial court's meticulous management of this complex and lengthy proceeding.

The convictions are AFFIRMED. Bryan's motion to dismiss the conspiracy charge on grounds of double jeopardy should have been granted and the matter is REMANDED for entry of an appropriate order of dismissal as to that count.