# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-40740

United States Court of Appeals
Fifth Circuit

**FILED**

August 6, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee

v.

EZELL BROWN, JR.,

　　　　Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Texas

Before HIGGINBOTHAM, DENNIS, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

What should have been a straightforward prosecution charging the defendant with lying in loan applications is now in its seventh year. The reason for the delay? Mostly problems involving venue, a "right [that] does not receive much attention these days, but was important enough to the Founders that it . . . along with the related right to trial by jury are the only rules of criminal procedure included in both the original Constitution and Bill of Rights." *United States v. Romans*, 823 F.3d 299, 325 (5th Cir. 2016) (Costa, J., concurring). The venue complication stems from some of the conduct in this case occurring in far north Dallas where the borders of the Northern and Eastern Districts of Texas meet. What was once largely farmland in that

No. 17-40740

western reach of the Eastern District is now a center of commerce. The result is that, much like the situation that has long prevailed in New York City where the Southern and Eastern Districts of New York often both have venue over the same crime, some federal offenses will involve conduct in both the Eastern and Northern Districts of Texas.

We decide whether the conduct that occurred in the Eastern District of Texas—signing the loan application at the closing—was sufficient to establish venue there. We also consider the defendant's claims that a constructive amendment occurred, that the evidence did not support his guilt, and that the government's closing argument was improper.

I.

Ezell Brown, Jr. owned and operated Uniq Financial Services, a company that originates loans insured by the Fair Housing Administration. In 2012, an Eastern District grand jury charged Brown with four counts of fraud relating to his loan business. The first three counts charged Brown with making false entries to a federal credit institution in violation of 18 U.S.C. § 1006. The Department of Housing and Urban Development (HUD), which includes the Fair Housing Administration, is the affected federal agency. The final count charged conspiracy to commit bank fraud. Before trial, the government dismissed Counts One and Four.

Trial commenced on the two remaining false entry counts. On the last day of trial, the district court ruled that a government witness could not "base his testimony establishing venue" on a particular loan document. This development led the parties to reach an agreement in which Brown would plead guilty to one of the counts and serve only one day in prison. As it has the right to do under Federal Rule of Criminal Procedure 11(c)(1)(C) for deals that try to guarantee a sentence, the district court rejected the plea agreement.

2

No. 17-40740

Brown then withdrew the plea. When the government elected to retry Brown on the two false entry counts, Brown sought to dismiss one on double jeopardy grounds. The district court denied that motion, and we affirmed. *United States v. Brown*, 651 F. App'x 286, 290 (5th Cir. 2016).

So the case was tried a second time, again on Counts Two and Three. The jury acquitted Brown of the former charge but found him guilty of the latter.

Count Three involved the purchase of a home in Lancaster, Texas (south of Dallas) by Sandria Johnson. Uniq originated and processed her loan. While working on Johnson's application, Brown's employee Candace Mitchell became concerned that Johnson did not earn enough from her part-time job at Charles Pest Control, Inc. to qualify for a loan. Mitchell shared her concerns with Brown, who said he would "take a look at it."

Mitchell testified that she kept the Johnson loan file in her office. After leaving work one night, Mitchell returned the next morning to find evidence of additional income for Johnson in the file, including pay stubs and W-2s. Brown was the only person remaining at the office after Mitchell had left the night before. Mitchell also recounted that Brown had taught her how to falsify documents used to support loan applications by using special computer software. She also testified that Brown had provided her with contacts who could help whitewash negative information in rent verifications for prospective homebuyers.

As for Johnson, she agreed that various documents supporting her loan application were falsified, including a Request for Verification of Employment, a pay stub, and a Form W-2 wage and tax statement, all showing that Johnson earned $1,669.50 per month. She testified that she had not seen the documents before and that she did not know who created them. Johnson also testified

3

No. 17-40740

that a Verification of Rent indicating she had been paying $800 a month to rent a house was false. She had lived at the listed address, but she paid no rent because her mother owned the house.

The Johnson loan closed in July 2006. Although Uniq's office was located in the Northern District of Texas, the closing occurred at a title company in the sliver of north Dallas that is in Collin County, which is part of the Eastern District. At the closing, Mitchell signed the Uniform Residential Loan Application in Brown's name and with his consent. The application repeated the same lies about Johnson's income and rent listed in the W-2s, pay stubs, and rent-verification form.

## II.

We first address whether signing the loan application in the Eastern District established venue there.[1] Brown relies on an 80-year-old Fourth Circuit case, *Reass v. United States*, 99 F.2d 752 (4th Cir. 1938), which held that a charge of making a false statement to a federal credit institution can only be tried in the district where the federal agency received the document. *Id.* at 755 (concluding that the "communication of the false statements to the corporation constitutes the very essence of the crime"); *accord United States v. Katzoff*, 268 F. Supp. 2d 493 (E.D. Pa. 2003). *Reass* viewed the false statement crime as one involving a "single act which occurs at one time and at one place," 99 F.2d at 754, so it rejected application of the default venue statute for continuing offenses, which provides that "any offense against the United States begun in one district and completed in another, or committed in more

---

[1] The government argues that Brown waived his venue challenge by not raising it before trial. *See* FED. R. CRIM. P. 12(b)(3)(A)(i). Brown counters that he had good cause for not doing so because he did not know until trial the location of the title company, which is the government's venue hook. *See* FED. R. CRIM. P. 12(c)(3) & advisory committee notes to 2014 amendment. This is a more difficult question than whether venue is proper in the Eastern District, so we do not decide the waiver question.

4

than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). *Reass* thus would require trying this case in Colorado where HUD received the loan application, even though neither the defendant nor any witnesses resided there.

We have long taken a different view of venue for false statement crimes. In a prosecution of a postal employee for lying to a Washington D.C.-based Loyalty Board about his membership in the Ku Klux Klan, we held that the catch-all section 1001 false statement crime is a continuing offense so venue was proper in Miami federal court where the defendant signed the false statement and placed it in the mail. *De Rosier v. United States*, 218 F.2d 420, 422–23 (5th Cir. 1955). In another section 1001 case, we held that the continuing nature of a false statement offense supported venue in the district where a doctor signed and mailed false Medicare claims (the Western District of Texas) in addition to where the government received those claims (the Northern District of Texas). *United States v. Herberman*, 583 F.2d 222, 225–27 (5th Cir. 1978) (explaining that "when the forms containing the alleged false statements were prepared and forwarded to [the agency] in Dallas, there was set in motion the events which allegedly culminated in the commission of the offenses charged").

Although these cases reject the Fourth Circuit's view that the false statement offense occurs only where the government receives the document, Brown correctly points out that their signing-plus-mailing-equals-venue holding does not directly address his situation because Johnson's loan application was signed in the Eastern District but mailed from the Northern District. But the broader "continuing offense" holding of *De Rosier* and *Herberman* strongly suggests that the act of making the false statement is

5

alone sufficient to establish venue. *See United States v. Greene*, 862 F.2d 1512, 1515–16 (11th Cir. 1989) (recognizing that precedent had not addressed whether making the lie alone creates venue but concluding that view was a natural consequence of cases using a continuing violation theory to find venue where the lie and mailing occurred). That is because making the false statement is what first "set[s] in motion" the crime. *Herberman*, 583 F.2d at 227. A later case confirms that this is the logical application of 18 U.S.C. § 3237(a) as the statute provides venue for continuing offenses where they "were begun, continued, or completed." *United States v. Bryan*, 896 F.2d 68 (5th Cir. 1990). A prosecution for creating false receipts of tax deductions, *Bryan* did not mention the place of mailing in holding that "venue properly lies where a false statement is prepared and signed, even though received and filed elsewhere." *Id.* at 72 (citing 18 U.S.C. § 3237(a)).[2]

Other circuits that have addressed this question in recent decades agree that the making of the false statement gives rise to venue. *See United States v. Clark*, 728 F.3d 622, 623–25 (7th Cir. 2013) (reversing district court that thought section 1001 prosecution could only be brought where the government received the false statements); *Greene*, 862 F.2d at 1515–16 (concluding in section 1014 prosecution that venue existed where false application was completed); *United States v. Zwego*, 657 F.2d 248, 251 (10th Cir. 1981) (holding

---

[2] None of these Fifth Circuit cases addresses venue under 18 U.S.C. § 1006. But we see no reason why it should not also be treated as a continuing offense. We have applied the continuing offense venue statute to the general false statement statute (18 U.S.C. § 1001), *see Herberman*, 583 F.2d at 227; the offense of making false statements in tax returns (26 U.S.C. § 7602(2)), *Bryan*, 896 F.2d at 72; and even a false statement offense specific to HUD (18 U.S.C. § 1012), *see Henslee v. United States*, 262 F.2d 750, 752–53 (5th Cir. 1959). And other circuits have applied the same principle to the offense of making false statements "for the purpose of influencing the Federal Housing Administration" or any FDIC-insured bank (18 U.S.C. § 1014). *See Greene*, 862 F.2d at 1515–16; *United States v. Zwego*, 657 F.2d 248, 251 (10th Cir. 1981).

that the "proper venue for the offense of making false statement to a federally insured bank may be either where the false statements were prepared, executed, or made, or where the offense was completed upon receipt of the false information by the bank").  The Fourth Circuit's earlier view that venue lies only in the place of government receipt thus appears to be a relic.  Indeed, it seems inconsistent with the Supreme Court's instruction that the location of a crime "must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Anderson*, 328 U.S. 699, 703 (1946), *cited in United States v. Cabrales*, 524 U.S. 1, 7 (1998).  The act criminalized in section 1006 is "mak[ing] any false entry in any book, report or statement."  And the purposes of the venue requirement—convenience of the defendant and witnesses and ensuring that the jury has a connection to the case, *Romans*, 823 F.3d at 326 (Costa, J., concurring); *Clark*, 728 F.3d at 625 (citing *United States v. Johnson*, 323 U.S. 273, 275–76 (1944))—are much better served by trying this case in the Eastern District of Texas where the alleged lie took place than in Colorado where the agency happened to receive the application.

Venue was proper.

## III.

Having concluded that the trial could take place in the Eastern District, we now consider Brown's arguments that it was infected with error.  He first argues that there was a constructive amendment or at least fatal variance for Count Three because the government focused its closing argument on lies in the loan application as opposed to lies in the supporting documents, which Brown contends is all the indictment charged.  Although he acknowledges

No. 17-40740

some uncertainty about which of those labels is a better fit for this claim,[3] that legal question ends up not mattering because the factual premises of this argument do not hold up.[4]

His first premise—that the indictment charged only falsehoods in the W-2, pay stubs, and rent verification forms—is not how we read the indictment. Count Three provides:

---

[3] The difference is not always clear. *See United States v. Adamson*, 291 F.3d 606, 615 (9th Cir. 2002); 1 CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. § 128 (4th ed.). A constructive amendment occurs when the court "permits the defendant to be convicted upon a factual basis that effectively modifies an essential element of the offense charged" or upon "a materially different theory or set of facts than that which [the defendant] was charged." *United States v. McMillan*, 600 F.3d 434, 451 (5th Cir. 2010). If an amendment has occurred, reversal is automatic. *United States v. Thompson*, 647 F.3d 180, 184 (5th Cir. 2011). In contrast, harmless error applies to a variance which results when there are differences between the indictment and the jury instruction but they do not rise to the level of the defendant being convicted of a separate crime. *See United States v. Jara-Favela*, 686 F.3d 289, 300 (5th Cir. 2012).

[4] Brown faces another hurdle with this claim. The ultimate concern with a constructive amendment or variance is that the jury should not be allowed to convict the defendant of a crime not charged in the indictment. When that happens, there are notice and double jeopardy concerns. *See United States v. Baker*, 17 F.3d 94, 98 (5th Cir. 1994). Although the arguments and proof the government uses to convict the defendant can shed light on what the jury actually decided, here the jury instruction specifically focused on false statements in the supporting documents and thus was consistent with Brown's view of what the indictment charged.

No. 17-40740

9.    Between on or about June 22, 2005, and on or about July 13, 2007, in the Eastern District of Texas and elsewhere, **Brown** and **Mitchell**, aided and abetted by each other and others known and unknown to the Grand Jury, being connected in a capacity with HUD, with intent to defraud HUD, knowingly made the following false entries in the reports or statements submitted to HUD, namely, by making inflated statements about the Buyers' assets and rent history knowing the statements were false, in connection with an application for a home mortgage loan:

| Count | Date | Address | Defendant(s) | False Statement |
|---|---|---|---|---|
| 3. | 7/31/06 | 1861 Sierra Trail Lancaster, TX | **Ezell Brown Candace Mitchell** | W-2, pay stubs, and Verification of Rent for Buyer, SJ, are fraudulent and were affirmed as true at the closing in the Eastern District of Texas. |

Each Count in violation of 18 U.S.C. § 1006.

To be sure, the indictment only lists the "W-2, pay stubs, and Verification of Rent for Buyer" under the heading "False Statement," and does not expressly mention the loan application.  But the indictment also alleges that the false statements were made "in connection with an application for a home mortgage loan."  And the indictment states that the listed supporting documents "were affirmed as true at the closing."  As the trial judge noted, this language could only refer to the affirmation section of the application.

The even bigger problem for Brown is that the underlying assumption of his claim—that there is a difference between what the supporting documents say and what the loan application says—is mistaken.  As one might expect, the application copies the wage and rental information from the supporting documents; indeed, that is why they are "supporting."  For example, the W-2s and pay stubs list Johnson's monthly income as $1,669.50.  So does the loan

No. 17-40740

application.[5] The Rent Verification Form lists $800 a month for her house. So does the application. Because the loan application copied the wage and rent data from the supporting documents, a finding that the latter are false means the application contained the same falsehoods. And vice versa.

As there was no difference between the jury concluding that the supporting documents were false and it deciding that the application contained those same falsehoods, there was no constructive amendment or variance.

IV.

What we just said about the loan application and supporting documents containing the same lies disposes of Brown's first challenge to the sufficiency of the evidence. It does not matter that the loan application does not expressly affirm the veracity of the supporting documents. The application itself, which required verification that "the information provided in this application" was "true and correct," included the same false statements about income and rental payments.[6] And the testimony from Candace Mitchell allowed the jury to conclude that Brown did not just know about the lies, but created them.

As for Brown's challenge to the materiality of these lies, he failed to raise it in either a motion for acquittal or one seeking a new trial. As neither the government nor the district court were provided with notice of that alleged deficiency, *see United States v. McDowell*, 498 F.3d 308, 312–13 (5th Cir. 2007), plain error review applies. *United States v. Delgado*, 672 F.3d 320, 331 (5th Cir. 2012). But even under de novo review, Brown's argument fails.

---

[5] On the same page where Johnson's application states a $1,669.50 monthly income, another section shows that her monthly income at Charles Pest Control, Inc. was only $669.50. Looking at the entire application, the missing "1" in that box is a typo.

[6] What is more, a false statement offense does not require that the lie be sworn or verified unless the statute includes such a requirement. *See United States v. Krause*, 507 F.2d 113, 117 (5th Cir. 1975) (noting that a false statement need not be sworn or verified to be a section 1001 violation).

10

No. 17-40740

The government need not show that the false entry actually "affected the lending decision," as Brown contends.  The false statement only needs to have "natural tendency to influence, or be capable of affecting or influencing, a government function." *United States v. Swaim*, 757 F.2d 1530, 1534 (5th Cir. 1985) (explaining "material fact" in context of section 1001 violation); *United States v. Beuttenmuller*, 29 F.3d 973, 982 (5th Cir. 1994) (applying that materiality standing to section 1006 violation), *overruled in part on other grounds by United States v. Gaudin*, 515 U.S. 506 (1995).  An officer in HUD's Quality Assurance Department testified how a prospective homeowner's rent history and income affect the lending decision.  Of course, the relevance of those questions to a lending decision is why the application asks them and why Brown thought the answers were important enough to go to the risk of lying about them and manufacturing fake documents to support the lies.

The evidence supports the verdict.

V.

Brown's final claim takes issue with the following remarks the prosecution made during its rebuttal at the end of trial:

> It's not the prosecution, not the agents, not the defense, not even – not even the judge.  You – 12 of you coming together collectively. A collective decision, decide *the truth in this case*.  What is this case about.  And that's what trials fundamentally are about.  Our judicial system, it is a *search for the truth*.  That is what a trial is. There is a dispute about what happened.  And so in a civilized way, this is how we come to decide – 12 members of the community *decide the truth*.

The prosecutor then urged the jury to keep its "eye on the ball [and] discover the truth."  These arguments, Brown maintains, invited the jury to decide the case based on which version of events was more likely true, thereby diluting the beyond-a-reasonable-doubt burden.

11

No. 17-40740

But the prosecutor's comments do not raise the same concern as the jury instruction that was challenged in *United States v. Gonzalez-Balderas*, 11 F.3d 1218, 1223 (5th Cir. 1994).  Even though that comment telling the jury that its "sole interest is to seek the truth" came from the judge, we found no error because the statement was made at the end of the charge in the context of telling the jury it was the judge of the facts as opposed to earlier when the court repeatedly emphasized the burden of proof.  *Id.*  A prosecutor's comments, which lack the imprimatur of the neutral judge, so should not be "equate[d]" with jury instructions.  *United States v. Harper*, 662 F.3d 958, 961 (7th Cir. 2011) (noting that "instructions from the court carry more weight with jurors than do arguments made by attorneys").  And the prosecutor, like the court in *Gonzalez-Balderas*, did not make the statement when discussing the burden of proof.  When that topic came up during the closing, the government repeatedly and accurately recited its heavy burden.  There was no error in telling the jury it had to "decide the truth," which after all is what "verdict" means.  *See* 2 ALEXANDER M. BURRILL, A LAW DICTIONARY AND GLOSSARY 584 (New York, Baker, Voorhis & Co. 2d ed. 1867) (explaining that the term "verdict" comes from the Latin expression *veredictum*, which means a "declaration of the truth").

\* \* \*

The judgment is AFFIRMED.