# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20409

United States Court of Appeals
Fifth Circuit

**FILED**

May 24, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

TAMNY DENISE WESTBROOKS, also known as Tammy Westbrooks, also known as Tammy Westbrook,

> Defendant - Appellant

---

Appeals from the United States District Court
for the Southern District of Texas

---

Before STEWART, Chief Judge, and HIGGINBOTHAM and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

Taxes were Tamny Denise Westbrooks's profession. She operated two businesses that helped people prepare their taxes. But it was misrepresenting profits from one of her own tax preparation business that got her into trouble. An indictment alleged that her returns falsely stated the income by grossly inflating amounts paid for wages. It also alleged that Westbrooks took steps to obscure the amount workers were actually paid. A jury found that the evidence supported those charges, convicting Westbrooks of corruptly endeavoring to obstruct the administration of the tax code and of three counts

No. 16-20409

of filing fraudulent tax returns. Westbrooks challenges the obstruction count on various grounds and also appeals the restitution order. We uphold the convictions and amount of the restitution award but modify the judgment so the restitution obligation is limited to the supervised release term that is the only period during which restitution can be imposed for a tax offense.

## I.

Westbrooks operated a tax preparation business, JATS Tax Service, in Charlotte, North Carolina. Tonya Robbins owned the company, but Westbrooks managed day-to-day operations and had signature authority for JATS's checking account. At the same time, Westbrooks co-operated another tax preparation business, CF&W Financial Services, in Houston.

The first sign of trouble came when the IRS executed a search warrant at JATS's office in 2009, and Westbrooks received a grand jury subpoena to produce records related to JATS. *United States v. Westbrooks*, 780 F.3d 593, 594 (4th Cir. 2015). Westbrooks produced only "a packet of materials comprised primarily of unopened mail and refund checks for clients." *Id.* The government, noting that most of the documents Westbrooks had provided were not responsive and that she had not produced documents typically maintained by an ongoing business operation, moved for an order to show cause why she should not be held in contempt. *Id.* A federal district court in North Carolina held a show cause hearing. *Id.* at 595. At the hearing, Westbrooks testified that from 2005 to 2009 no W-2s or 1099s were prepared or filed for JATS workers, that she kept no records identifying the employees of JATS, did not keep track of their wages or the hours they worked, and that Robbins had already handed over all bank records responsive to the subpoena, which should support the amounts reflected as wages in the tax returns. The court found Westbrooks guilty of criminal contempt "for failure to comply with a grand jury subpoena." *Id.* at 594.

2

No. 16-20409

A Houston grand jury later charged Westbrooks with one count of corruptly endeavoring to obstruct the due administration of the internal revenue laws (count one), and three counts of willfully filing false tax returns for 2007, 2008, and 2009 (counts two through four). The obstruction count was based on conduct occurring from 2004 through 2009, including submitting the returns that falsely stated low income for JATS. The indictment alleged that although annual compensation for all JATS workers never exceeded $30,000, the returns listed wages or subcontractor expenses ranging from $87,425 to $248,400 during these years. This count further alleged that Westbrooks did not properly file IRS and social security forms documenting compensation of JATS employees and made such payments in cash. Finally, it relied on her providing false and misleading testimony at the show cause hearing.

Westbrooks unsuccessfully moved to dismiss count one, arguing that the indictment failed to allege that there was an ongoing IRS investigation or proceeding during the obstructive conduct, that the statute was vague, and that venue was lacking. After a four-day trial, a jury convicted Westbrooks on all counts.

The district court imposed a total sentence of 40 months. It also ordered her to pay $273,460 in restitution to the IRS in quarterly instalments of $25 or half of prison earnings, whichever is greater, while incarcerated, and in the monthly amount of $400 or ten percent of gross earnings, whichever is greater, during the year of supervised release that would follow her prison term.

## II.

### A.

Westbrooks contends the indictment did not allege an essential element of the tax obstruction statute because it did not assert that she acted with knowledge of a pending IRS action such as an investigation or proceeding. Westbrooks was convicted under the omnibus clause of the statute, which

makes it a crime to "in any . . . way corruptly or by force or threats of force . . . obstruct[ ] or impede[ ], or endeavor[ ] to obstruct or impede, the due administration of this title." 26 U.S.C. § 7212(a). The clause does not mention a proceeding or investigation.

Our prior cases involving section 7212(a) do not directly confront this question but treat the statute as not requiring knowledge of a pending IRS action. In *United States v. Reeves*, 752 F.2d 995 (5th Cir. 1985), the defendant knew he was being investigated—he violated section 7212(a) by filing a lien against the residence of an IRS agent investigating his tax returns. *Id.* 996–97. Nonetheless, in defining the scope of the "corruptly" element, we recognized that the tax obstruction statute "reaches a broad category of circumstances." *Id.* at 1000. We thus defined "corruptly" narrowly—to require that the defendant acted "with the intent to secure an unlawful benefit," *id.* at 1001—because "interference with the administration of the tax laws *need not concern a proceeding* in which a party stands to gain an improper advantage . . . ." *Id.* at 999 (emphasis added). In contrast, we noted that an obstruction statute like 18 U.S.C. § 1503 that limits obstruction to that occurring in connection with a judicial proceeding does not necessitate an "intent to benefit" finding; obstruction in response to a pending action "will almost necessarily result in an improper advantage." *Id.*

After *Reeves*, we upheld convictions under section 7212(a) when there was no pending action: the convictions were based on defendants' corrupt efforts to trigger an investigation into others. *United States v. Saldana*, 427 F.3d 298, 301, 304–05 (5th Cir. 2005) (noting that that the defendant filed "false tax reports regarding several individuals for the purpose of triggering [IRS] audits and thereby harassing and intimidating these individuals"). In doing so, we rejected the defendants' contention that section 7212(a) requires intent to gain a benefit *under the tax laws*. *Id.* If section 7212(a) does not

require even that intent, it would not seem to require intent to gain a benefit in a particular investigation or proceeding.

To the extent we have not already rejected Westbrooks's position, we do so now, joining a majority of the circuits to consider the question. Of the five circuits to directly address the issue, only the first to consider the question adopted Westbrooks's position, and one judge dissented from that ruling. *See United States v. Kassouf*, 144 F.3d 952, 955–58 (6th Cir. 1998).[1] Four have since held that section 7212(a) does not require an ongoing IRS action. *United States v. Floyd*, 740 F.3d 22, 32, 32 n.4 (1st Cir. 2014) ("A conviction for violation of section 7212(a) does not require proof of either a tax deficiency . . . or an ongoing audit," so "the filing of false tax documents" or "concealment of income or other assets from the IRS can form the basis for a violation of the statute"); *United States v. Marinello*, 839 F.3d 209, 222 (2d Cir. 2016) ("[S]ection 7212(a)'s omnibus clause criminalizes corrupt interference with an official effort to administer the tax code, and not merely a known IRS investigation."); *United States v. Massey*, 419 F.3d 1008, 1010 (9th Cir. 2005) ("[T]he government need not prove that the defendant was aware of an ongoing tax investigation to obtain a conviction under § 7212(a); it is sufficient that the defendant hoped 'to benefit financially' from [his] conduct."); *United States v. Sorensen*, 801 F.3d 1217, 1232 (10th Cir. 2015), *cert. denied*, 136 S. Ct. 1163 (2016) ("7212(a) does not require an ongoing proceeding . . . .'").[2]

---

[1] The Sixth Circuit recently reaffirmed *Kassouf*. *United States v. Miner*, 774 F.3d 336, 345 (6th Cir. 2014).

[2] Westbrooks unsuccessfully attempts to distinguish *Floyd* and *Massey*. *Floyd* is a sufficiency of the evidence case, but it held that evidence was sufficient to support an obstruction conviction because no evidence of an ongoing audit was required. 740 F.3d at 32. *Floyd* said *Kassouf* is not "good law." *Id.* at 32 n.4. *Massey*, addressing the adequacy of a jury charge, held that the charge was correct because the government was not required to prove knowledge of an ongoing investigation. 419 F.3d at 1010.

No. 16-20409

As these cases explain, *Kassouf* did not correctly interpret section 7212(a). *Kassouf* relied on *United States v. Aguilar*, 515 U.S. 593, 600 (1995), which held that a conviction under section 1503 requires a nexus between the underlying conduct and judicial proceedings. *Id.* But the text of section 7212(a) is substantially different from that of section 1503.[3] First, section 1503's "due administration of justice" provision follows a list "of specific prohibitions of conduct that interferes with actual judicial proceedings" which "supports a reading that tethers the 'due administration of justice' to actual grand jury or judicial proceedings." *Marinello*, 839 F.3d at 220 (quoting *United States v. Wood*, 384 F. App'x 698, 704 (10th Cir. 2010)). In contrast, section 7212(a) begins by referring to attempts to interfere with officers "acting in an

---

[3] The full text of the provisions is as follows:

Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished . . . .

18 U.S.C. § 1503.

Whoever corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or threats of force (including any threatening letter or communication) obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, shall [be punished] . . . .

26 U.S.C. § 7212(a).

6

official capacity." *Id.* Second, section 1503 refers to the "due administration of justice" as opposed to the "due administration of this title." *Id.* Both differences indicate section 7212(a) criminalizes a broader range of conduct: the IRS, through a variety of official actions, "duly administer[s] the tax laws even before initiating a proceeding." *Sorensen*, 801 F.3d at 1232. Courts administer justice only through proceedings.

The history of the provisions is also different. *Marinello*, 839 F.3d at 221. *Aguilar* relies on *Pettibone v. United States*, 148 U.S. 197, 202 (1893). *Pettibone* interpreted an earlier version of section 1503, which made it a crime to "corruptly endeavor[ ] to influence, intimidate, or impede any witness or officer *in any court* of the United States in the discharge of his duty, or corruptly . . . endeavor[ ] to obstruct or impede[ ] the due administration of justice *therein.*" 148 U.S. at 202 (emphasis added). Although Congress later removed "therein," "there is no indication . . . that, in doing so, it intended to fundamentally alter the statute's meaning." *Marinello*, 839 F.3d at 221. Section 7212(a) has no similar predecessor tying it to a proceeding.[4]

Finally, section 7212(a)'s purpose supports the broader reading most courts have embraced. *United States v. Rainey*, 757 F.3d 234, 245 (5th Cir. 2014) ("[E]ven in a criminal case, a statute's purpose may be a 'consideration [that] strongly support[s]' a textual interpretation."). The breadth of section 7212(a)'s language shows that the omnibus provision was intended to prevent frustration of tax collection efforts, a purpose which would be thwarted by Westbrooks's narrow interpretation. "In a system of taxation such as ours which relies principally upon self-reporting, it is necessary to have in place a

---

[4] *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005), also does not support Westbrooks's view. Although that case found that the government must prove a "nexus" between certain acts and a particular proceeding, the statute it applied, 18 U.S.C. § 1512(b), by its terms applies to obstruction of an "official proceeding." *Id.* at 707.

No. 16-20409

comprehensive statute in order to prevent taxpayers and their helpers from gaining unlawful benefits by employing that variety of corrupt methods that is limited only by the imagination of the criminally inclined." *United States v. Popkin*, 943 F.2d 1535, 1540 (11th Cir. 1991) (internal quotation marks and citation omitted).[5]

The indictment therefore did not fail to allege an essential element of the obstruction charge.

## B.

Westbrooks argues that without her narrowing interpretation that requires a pending IRS action, section 7212(a) is unconstitutionally vague. To prevail on this claim, she must show that the statute "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *United States v. McRae*, 702 F.3d 806, 836–37 (5th Cir. 2012) (quoting *Holder v. Humanitarian Law Project,* 561 U.S. 1, 18 (2010)).

Although *Reeves* does not involve a vagueness challenge, one reason it gives for its narrow construction of "corrupt" it to preserve the statute from vagueness challenges. 752 F.2d at 999–1000. Since then, every court to consider such a challenge to section 7212(a) has rejected it, reasoning that *Reeves*'s interpretation of "corrupt" provides sufficient clarity and notice. *See*, *e.g.*, *United States v. Kelly*, 147 F.3d 172, 176 (2d Cir. 1998); *United States v.*

---

[5] Westbrooks's argument, raised in her reply brief, that the legislative history of 7212(a) indicates that the provision was intended to address only interference with IRS agents is: (1) counteracted by the text of the provision, which refers to action that obstructs "any officer or employee of the United States acting in an official capacity under this title *or in any other way . . .* obstructs or impedes" administration of the title; and (2) has been convincingly rejected by other courts, *see United States v. Martin*, 747 F.2d 1404, 1409 (11th Cir. 1984) ("Congress was not required to list in the legislative history every conceivable corrupt endeavor to avoid waiving the statute's application to one type of corrupt endeavor."); *United States v. Bowman*, 173 F.3d 595, 598 (6th Cir. 1999); *United States v. Mitchell*, 985 F.2d 1275, 1279 (4th Cir. 1993).

*Ring*, 191 F.3d 462, at *1 (9th Cir. 1999); *Wood*, 384 F. App'x at 706; *Popkin*, 943 F.2d at 1540.

Westbrooks again relies on *Kassouf*, pointing out that the Sixth Circuit expressed concern that requiring no connection to a pending proceeding would expose section 7212(a) "to legitimate charges of overbreadth and vagueness." 144 F.3d at 958.  The Sixth Circuit reasoned that "out of the hundreds of people who file taxes every day, there is no guarantee that a particular tax return will be audited," so "it would be highly speculative to find conduct such as the destruction of records, which might or might not be needed, in an audit which might or might not ever occur, is sufficient to make out an omnibus clause violation."  *Id.*  This ignores narrowing work done by other portions of the statute.  As mandated by *Reeves*, only destruction of documents with the intent to gain an unlawful advantage would fall within section 7212(a).

In any event, regardless of whether section 7212(a) could be vague as applied to some conduct, "[a] person whose conduct is clearly proscribed by a statute cannot . . . complain that the law is vague as applied to the conduct of others."  *McRae*, 702 F.3d at 837 (quoting *Humanitarian Law Project,* 561 U.S. at 18–19).  That describes Westbrook.  She fabricated compensation amounts on her returns and engaged in deceptive practices, such as making cash payments and not filing wage reporting documents to conceal the low amounts of compensation the workers received.  *See Reeves*, 752 F.2d at 998 (finding section 7212(a) "directed at efforts to bring about a particular advantage such as impeding the collection of one's taxes, the taxes of another, or the auditing of one's or another's tax records"); *Wood*, 384 F. App'x at 706 (finding using deceptive techniques to hide income and assets from the IRS clearly covered).

Westbrooks rightly argues that, after *Johnson v. United States*, 135 S. Ct. 2551 (2015), section 7212(a) is not saved by the fact that some conduct clearly falls within a statute's prohibition.  *Id.* at 2561.  But as several circuits

No. 16-20409

have held, *Johnson* did not change the rule that a defendant whose conduct is clearly prohibited cannot be the one making that challenge. *See United States v. Bramer*, 832 F.3d 908, 909 (8th Cir. 2016) ("Though Bramer need not prove that § 922(g)(3) is vague in all its applications, our case law still requires him to show that the statute is vague as applied to his particular conduct."); *Arrigoni Enter., LLC v. Town of Durham*, 629 F. App'x 23, 26 (2d Cir. 2015); *Maages Auditorium v. Prince George's Cty.*, 2017 WL 1019060, at \*6 (4th Cir. Mar. 15, 2017); *United States v. Huff*, 630 F. App'x 471, 487 (6th Cir. 2015); *United States v. Zagorovskaya*, 628 F. App'x 503, 504 (9th Cir. 2015); *Miranda v. U.S. Att'y Gen.*, 632 F. App'x 997, 1000 (11th Cir. 2015); *Flytenow, Inc. v. FAA*, 808 F.3d 882, 895 (D.C. Cir. 2015).

The vagueness challenge fails.

## C.

So does Westbrooks's argument that her prosecution violated the Double Jeopardy Clause in light of her earlier contempt conviction. As this argument is being made for the first time on appeal, it must satisfy the stringent plain error standard. *United States v. Odutayo*, 406 F.3d 386, 392 (5th Cir. 2005).

Westbrooks cannot overcome even the first hurdle that requires her to show error as if the argument had been preserved. Under *Blockburger v. United States,* 284 U.S. 299, 304 (1932), two statutes are not the same offense if each contains an element not contained in the other. *United States v. Dixon*, 509 U.S. 688, 696 (1993). Criminal contempt under 18 U.S.C. § 401(3) and the section 7212(a) obstruction statute are separate offenses. Among other things, section 7212(a) does not require proof of a court order, and section 401(3) does not require an endeavor to obstruct or impede due administration of the

10

Internal Revenue laws.[6]  And the two convictions apply to different conduct. The contempt conviction involved Westbrooks's failure to adequately respond to the subpoena; the obstruction conviction involved, among other conduct, her false testimony when she was questioned about that noncompliance in the North Carolina court.

## D.

Westbrooks lastly challenges her count one conviction for lack of venue, asserting that JATS's home in North Carolina was the appropriate place to try the case.  A defendant has the right to be tried in the district in which the alleged crime was committed.  U.S. CONST. amend. VI; FED. R. CRIM. P. 18; *United States v. Bryan*, 896 F.2d 68, 72 (5th Cir. 1990).  But venue may lie in more than one district: an "offense against the United States begun in one district and completed in another, or committed in more than one district, may be . . . prosecuted in any district in which such offense was begun, continued, or completed."  18 U.S.C. § 3237(a).  So even if venue did lie in Charlotte federal court, Westbrooks also could be tried in Houston if part of a continuing pattern of obstructive conduct occurred there.

The five-year period of obstructive conduct alleged in count one was a continuing offense at least some of which took place in the Southern District of Texas.  Westbrooks's actions in Houston and Charlotte were interrelated and in furtherance of the same desire to reduce her tax liability by inflating labor expenses.  There was evidence she prepared and submitted the fraudulent tax returns charged in count one for herself and other JATS employees in Houston. For example, her tax returns from 2004 through 2009 containing the false

---

[6] The reply brief's invocation of the collateral-estoppel aspect of double jeopardy, *see Ashe v. Swenson,* 397 U.S. 436 (1970), is too late.  In any event, there is no prior ruling in Westbrooks's favor to support such an argument.  She was found guilty at the contempt trial.

JATS wage numbers, list CF&W, at its Houston address, as the tax preparer. So do returns Westbrooks prepared for JATS workers. This is sufficient to establish venue. *See Bryan*, 896 F.2d at 72 (finding knowingly and willfully aiding and assisting in the preparation or presentation of fraudulent tax returns in violation of 26 U.S.C. § 7206(2) a continuing offense and looking to the address listed for the tax preparer to determine venue); *see also United States v. Nell*, 570 F.2d 1251, 1256 (5th Cir. 1978) (same). There was venue in the Southern District of Texas.

## III.

We next address Westbrooks's challenges to the restitution the district court imposed. She challenges the statutory authority for the award as well as the amount awarded.

## A.

A federal court cannot order restitution "except when authorized by statute." *United States v. Love*, 431 F.3d 477, 479 (5th Cir. 2005). Westbrooks maintains the district court's order of restitution was not authorized because: (1) the court imposed restitution as part of her sentence under a general restitution statute, which is not permitted for Title 26 offenses; and (2) even if the court imposed restitution as a condition of supervised release, which is permitted for Title 26 offenses, it was not authorized to do so because she did not agree to restitution in a plea bargain.

Regardless of whether Westbrooks objected to the district court's statutory authority to impose restitution, which the parties contest, we review de novo. A sentence that exceeds a court's statutory authority should be corrected on plain error review, so we review whether restitution was illegally awarded as part of a sentence de novo, and if it was, find plain error. *See*

No. 16-20409

*United States v. Nolen*, 523 F.3d 331, 382, 382 n.52 (5th Cir. 2008); *United States v. Feast*, 614 F. App'x 195, 196–97 (5th Cir. 2015).[7]

Neither the Victim and Witness Protection Act, 18 U.S.C. § 3663, nor the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, allow restitution for a tax code offense under Title 26 (as opposed to offenses described in the general criminal code of Title 18). But several statutes, read together, allow district courts to order restitution for tax offenses as a condition of supervised release. *Nolen,* 472 F.3d at 332–33. The first link in the chain is 18 U.S.C. § 3583(d), which authorizes courts to impose, as a condition of supervised release, "any condition set forth as a discretionary condition of probation in section 3563(b)." Section 3563(b) in turn authorizes a district court to order "restitution to a victim of the offense under section 3556." 18 U.S.C. § 3563(b). Section 3556 connects to the general restitution provision, authorizing a district court to "order restitution in accordance with section 3663," which provides that a court "may order . . . that the defendant make restitution to any victim of such offense." 18 U.S.C. § 3663(a); *see also United States v. Dahlstrom,* 180 F.3d 677, 686 (5th Cir.1999). Although section 3663(a) limits restitution to non-Title 26 offenses, this limit does not apply to restitution as a condition of supervised release. *Love*, 431 F.3d at 481. Courts' broad authority to order restitution as a condition of supervised release in tax cases is recognized in the Sentencing Guidelines and generally in the federal courts. *See* U.S.S.G. § 5E1.1(a)(2); *United States v. Batson,* 608 F.3d 630, 635 (9th Cir. 2010) ("The

---

[7] The government says *United States v. Ortiz*, 252 F. App'x 664, 665–67 (5th Cir. 2007), applies plain error review to whether restitution was imposed under the wrong statute, but the court did the same thing in *Ortiz* as it did in *Nolen* and *Feast*. Recognizing the legality of the sentence was at issue, it engaged in a de novo "careful examination of the record" which showed the district court awarded restitution under section 3663, not as a condition of supervised release, then considered whether awarding restitution under the wrong statute was plain error, summarily concluding that it was. *Id.*

13

Supervised Release Statute, together with the Probation Statute, unambiguously authorizes federal courts to order restitution as a condition of supervised release for *any* criminal offense, including one under Title 26, for which supervised release is properly imposed.").

Westbrooks does not quarrel with courts' general authority to impose restitution as a condition of supervised release for Title 26 offenses, but she maintains the district court based its restitution order on the wrong statute. We have vacated restitution orders if the record shows that, although the district court could have imposed restitution as a condition of supervised release, it did not do so. *See Feast*, 614 F. App'x at 196–97; *Ortiz*, 252 F. App'x at 666. But that is not what happened here. The presentence report correctly states that "[b]ecause this is a Title 26 offense, mandatory restitution is not applicable" but "the Court can order restitution as a condition of [Westbrooks's] supervised release term." The judgment lists restitution as a special condition of supervision.

There is, however, some inconsistency in the judgment as it mandates that Westbrooks begin making restitution payments before she completes her sentence. It requires her to pay restitution to the IRS in quarterly instalments of $25 or half of prison earnings during incarceration. And "a restitution award due prior to the commencement of a term of supervised release is a component of the sentence, not a condition of supervised release." *Feast,* 614 F. App'x at 197 (citing *United States v. Howard,* 220 F.3d 645, 647 (5th Cir. 2000)). Indeed, in *Feast*, we vacated a restitution award in part because it was due "immediately," which was inconsistent with it being a condition of supervised release. *Id.* at 196. Similarly, the Seventh Circuit has held that because a district court did not articulate that basis for restitution and ordered that it was payable immediately, restitution was not imposed solely as a condition of supervised release. *United States v. Hassebrock*, 663 F.3d 906, 924–25 (7th

14

No. 16-20409

Cir. 2011); *see also United States v. Dean*, 64 F.3d 660, at *4 (4th Cir. 1995) (unpublished table decision) (finding restitution award was not imposed solely as a condition of supervised release because it was due immediately).

But in those cases the record contained few indications the district court meant to impose restitution only as part of supervised release under 3583(d) to counteract the clue timing provided of an improper statutory basis. And it often was not just the timing of the restitution order that led to the conclusion that the court relied on improper statutory authority. In both *Feast* and *Hassebrock,* the presentence reports cited only section 3663 or section 3663A as the basis for restitution. 614 F. App'x at 196–97; 663 F.3d at 924, 926. And in *Hassebrock*, the district court had explained that only if restitution was "not paid during imprisonment, it w[ould] be a condition of supervised release." 663 F.3d at 924.

We thus conclude that the judgment contains an error in ordering that Westbrooks begin making payments while in prison—a timeline that exceeds the court's statutory authority. But that error does not overcome the other indications that the court intended to impose restitution under the statute permitting it as part of supervised release. The most efficient remedy in this situation is to modify the judgment so that Westbrooks does not owe restitution until she begins her term of supervised release. *See* 28 U.S.C. § 2106; *United States v. Munoz*, 549 F. App'x 552, 555–56 (7th Cir. 2013) (modifying timing of restitution payments because district court mistakenly ordered that restitution which could only be awarded as a condition of supervised release be due immediately).

Westbrooks also argues that *United States v. Stout*, 32 F.3d 901 (5th Cir. 1994), allows courts to impose restitution as a condition of supervised release only as part of a plea agreement. *Stout* states that "courts are permitted to impose restitution as a condition of supervised release to the extent agreed to

15

by the government and the defendant in a plea agreement." *Id.* at 904. *Stout* applied section 3663(a)(3), which states that a "court may *also* order restitution in any criminal case *to the extent agreed to by the parties in a plea agreement.*" 18 U.S.C. § 3663(a)(3) (emphasis added). Westbrooks has not pointed to any case holding that restitution is off limits as a condition of supervised release when a defendant is convicted after a trial. In fact, we have recognized that "in the absence of an agreement by the defendant, restitution may not be ordered for a Title 26 offense *except as a condition of probation or supervised release*, under 18 U.S.C. 3583(d), 3563(b)(2), and 3556." *Nolen*, 523 F.3d at 332–33 (emphasis added); *see also Feast*, 614 F. App'x at 197. And we have approved restitution orders as conditions of supervised release after trial and conviction. *See Nolen*, 523 F.3d at 332–33; *Dahlstrom*, 180 F.3d at 686. We see no basis for creating the "counterintuitive" and atextual limitation Westbrooks proposes. *See United States v. Miller*, 406 F.3d 323, 329–30 (5th Cir. 2005) (noting that section 3583 does not manifest the "counterintuitive intention" that it "preclude[s] the imposition of restitution as a condition of supervised release in any case in which the defendant goes to trial").

**B.**

Westbrooks next objects to the amount of restitution awarded, and, relatedly, the tax loss calculation used in determining her sentencing range. We review the amount of a restitution award for abuse of discretion, reviewing factual findings for clear error. *United States v. Sharma*, 703 F.3d 318, 322 (5th Cir. 2012). Restitution is limited to the actual loss caused by the defendant's offense of conviction. *Id.* at 323. We similarly review a loss calculation under the Sentencing Guidelines for clear error. *United States v. Johnson*, 841 F.3d 299, 303 (5th Cir. 2016). When the loss is "uncertain," a court may "simply make a reasonable estimate based on the available facts." U.S.S.G. § 2T1.1 cmt. n.1; *see United States v. Reasor*, 541 F.3d 366, 369 (5th

Cir. 2008) (noting that to support a sentence, "all that is necessary is that [a tax loss] finding be plausible in light of the record as a whole." (internal citations and quotation marks omitted)).  For both restitution and sentencing purposes, we "give[ ] the district court wide latitude to determin[e] the amount of loss." *United States v. Cothran,* 302 F.3d 279, 287 (5th Cir. 2002); *United States v. Aubin,* 87 F.3d 141, 150 (5th Cir. 1996).

Westbrooks argues restitution should be limited to $177,258.00 in tax loss for tax years 2007 through 2009, in other words, to losses related to the years that were the basis for the three counts of filing false returns.  But the district court also awarded restitution for the obstruction conviction.  The $273,460 awarded represents the tax reduction Westbrooks gained by including excessive wages and subcontractor expenses on tax returns for three additional years from 2004–2006.  The fraudulent reporting dating back to 2004 was charged as part of the obstruction offense in count one.  Other circuits have held that restitution may include tax loss caused by a violation of section 7212(a).  *See United States v. Scheuneman*, 712 F.3d 372, 380 (7th Cir. 2013) ("[T]he 2000–2002 tax losses were properly included within [defendant's] restitution obligation because they were directly attributable to his conviction . . . for interference with administration of the Internal Revenue laws in violation of 26 U.S.C. § 7212(a)"); *United States v. Harrison*, 541 F. App'x 290, 293 (4th Cir. 2013) ("[Defendant] overlooks his conviction . . . for interference with the administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a).  This count covered a broader swath of conduct and amply supports the full restitution award.").  We agree with those decisions and find no error in including tax loss dating back to 2004.

Westbrooks further objects that the record does not support the amounts by which the IRS determined she overstated payments to JATS workers.  The IRS calculated that number "based on the actual amount of wages that were

paid as reported by JATS Tax Service workers who testified." The loss amount for the years 2007 through 2009 was based on testimony at trial and was not clearly erroneous.

Former employees did not testify at trial about their wages for the three earlier tax years. Instead, the IRS agent testified that he reviewed bank records and identified checks which appeared to be for payroll for those years. The checks totaled $13,885 for 2004 (compared to $87,425 reported); $10,205 for 2005 (compared to $124,878 reported); and $2,420 for 2006 (compared to $193,426 reported). Recognizing that JATS also paid workers in cash, in providing a calculation for the presentence report, the IRS adjusted these amounts upward based on statements JATS workers gave during the investigation. This adjustment added cash payments of $11,785, $10,180, and $13,600 to the check amounts for 2004, 2005, and 2006. Westbrooks complains that there is no testimony in the record as to the amount employees were paid in cash from 2004 through 2006. But she does not claim she lacked access to the summaries of the witness interviews and in-court testimony is not necessary to support a restitution award or loss calculation. Indeed, information in a presentence report is generally sufficient to support an award. *United States v. Zuniga,* 720 F.3d 587, 590–91 (5th Cir. 2013); *United States v. Davis,* 616 F. App'x 742, 745 (5th Cir. 2015). If a defendant takes issue with information in the report with sufficient indicia of reliability, "the defendant bears the burden of demonstrating that the information cannot be relied upon because it is materially untrue, inaccurate or unreliable." *United States v. Angulo,* 927 F.2d 202, 205 (5th Cir. 1991). Probation's calculation appears reliable given its consistency with the numbers used for the later years, and

No. 16-20409

Westbrooks did not carry her burden of presenting "[r]ebuttal evidence."[8] *Zuniga,* 720 F.3d at 591 (internal quotation marks and citation omitted). The figure used for restitution and the loss amount is not clearly erroneous.

**\* \* \***

The judgment is MODIFIED so that no amount of restitution is due until Westbrooks completes her prison sentence and begins her term of supervised release. As modified, the judgment is AFFIRMED.

---

[8] Westbrooks does not explain how testimony that four people worked at JATS on some occasions invalidates the tax loss calculation.